STATE OF MISSOURI at the relation and to the use of HARRY MARTIN, Collector of Douglas County, v. R. E. CHILDRESS, Appellant.— 134 S. W. (2d) 136.

Division One, December 13, 1939.

496

*Jos. V. Pitts* for appellant.

*John. M. Bragg* for respondent.

BRADLEY, C.—This cause was commenced September 5, 1936, to enjoin defendant from moving a house from a half acre tract of land upon which there were taxes due and unpaid. A temporary injunction was made permanent and defendant appealed.

It is alleged that there was "due the sum of $74.61, which has been regularly assessed against the following described lands, to-wit" (here follows description); that "said taxes are long past due and that defendant has refused and failed to pay the same;" that plaintiff "is advertising said lands for sale under the laws of the state of Mo. (Jones-Munger Act, Laws 1933, pp. 425 et seq.), and that the same will be sold on the 1st Monday of November of this year" (1936); that "on said land there is a large building and that said building is the most valuable part of said land, and that said defendant is threatening to remove said building from said land; that if said building were removed the lands would not be worth the above sum of money, and that the taxes on said land could not be recovered; that the defendant does not intend to pay said taxes and will not pay the same if permitted and allowed to remove said building, and if restrained from removing said building defendant will pay aforesaid taxes." Other allegations were made, but it is not necessary to deal further with the petition.

A temporary restraining order was made on the day petition was filed. Defendant answered by a general denial, and also filed motion to dissolve. Among the grounds set out in the motion was this: "The assessment of taxes herein is against a 'part of NW¼ NW¼, Sec. 23, Twp. 27, range 17, and is vague, uncertain and void for uncertainty.'"

The record is not clear at all, and we infer and assume some facts. Martin was county collector of Douglas County, and defendant owned a half acre of land in the county, described correctly in a deed record introduced as "beginning on rock corner on east line of NW¼ NW¼, Sec. 23, Twp. 27, range 17, 34 rods and 7 ft. north of SE corner of said NW ¼ NW¼; thence west 7 rods; thence south 11 and 3/7 rods; thence east 7 rods; thence north 11 and 3/7 rods to place of beginning, containing ½ acre."

The land was described on the assessor's books and on the collector's books as a "part of NW¼ NW¼, Sec. 23, Twp. 27, range 17," and, under this description, was being advertised for sale when this suit was filed.

It is not claimed that such a suit as this cannot be lawfully maintained, and without ruling that question, we proceed as though the remedy here invoked is proper on the part of a collector in the discharge of his official duties to collect taxes.

As we view the situation, two questions are presented, first, have we jurisdiction? and second, are the facts sufficient to support the judgment? Respondent has not favored us with a brief, and

defendant, appellant here, says nothing about the question of jurisdiction. It is our duty, however, to determine this question. [Perkins v. Burks et al. (Mo.), 61 S. W. (2d) 756-757, and cases there cited; Rust Sash & Door Co. v. Gate City Bldg. Corp. et al., 342 Mo. 206, 114 S. W. (2d) 1023.] If we have jurisdiction of this appeal it is under that part of Section 12, Art. VI, Constitution, providing that an appeal, "in cases involving the construction of the revenue laws of the State," lies to the Supreme Court.

■ Defendant contends that the description of the land on the tax books and in the notice of sale is no description at all, and is wholly insufficient to support a valid sale, and therefore insufficient to support the present judgment. Section 9782, Revised Statutes 1929, Mo. Stat. Ann., sec. 9782, p. 7891, provides, among other things, that the assessor's " 'real estate book' . . . shall contain an accurate description of the land (in the county and subject to assessment) by the smallest legal subdivisions, or by smaller parts, lots or parcels, when sections and the subdivisions thereof are subdivided into parts, lots or parcels," and this section further provides that "at the close of each of the owners' lists (on assessor's books), the assessor shall place all the lands that appear to belong to the said owner, which cannot be properly described by numerical order, as contemplated in this section, which shall be otherwise properly described, indicatng the quantity and location thereof."

Section 9784, Revised Statutes 1929 (Mo. Stat. Ann., sec. 9784, p. 7893), prior to repeal (Laws 1939, p. 840), made it the duty of the county court to "furnish the county recorders of the respective counties with a book, to be known as and denominated the 'land list,' which shall contain all lands in the county, arranged as nearly as may be in numerical order of range, township, sections and parts of sections, by the least legal subdivisions. . . . In making up this book, if there be any land in any section or block that cannot be described as set forth above, it shall be otherwise briefly described, indicating the quantity and location thereof. . . ."

Section 9782, supra, in addition to the provisions above set out, makes it the "duty of the assessor, each year, in compiling" the real estate book "to procure the descriptions of the land and the names of the owners from the book known as and denominated 'the land list' kept by the recorder." As to whether or not the recorder of Douglas County kept such a book as required by Section 9784, does not appear, but the duty of the assessor to have an accurate description of the land and the names of the owners on his books is not contingent on the county court furnishing to the recorder the land list book provided for by Section 9784.

State ex rel. Hadley v. Adkins et al., 221 Mo. 112, 119 S. W. 1091, was in certiorari, and the defendants were the county judges of McDonald County. The purpose was to quash an order of the county

court selecting a certain bank as the county depository. The certiorari proceeding was based on the ground that there had been no notice for bids published as required by law. The trial court quashed the order of the county court, and the cause was appealed to the St. Louis Court of Appeals. The Court of Appeals transferred the cause to the Supreme Court on the theory that the construction of the revenue laws of the State was involved. [State ex rel. Hadley v. Adkins, 119 Mo. App. 396, 100 S. W. 661.] This court, on the question of jurisdiction, reviewed many cases, and held that it had jurisdiction. The court said (221 Mo. l. c. 118, 119 S. W. l. c. 1093): "From a review of the cases we conclude: (1) That when our jurisdiction is put upon the ground that the construction of the revenue laws of the State is involved, the law up for construction must be a State law . . .; (2) that it makes no difference where the law is to be found, whether under the title of 'revenue' or any other title, so long as it relates to the subject matter of revenue; (3) that the revenue must be directly and primarily concerned, not merely indirectly or as an incident; (4) that the term 'revenue law' covers and includes laws relating to the disbursement of the revenue and its preservation as well as provisions relating to the assessment, levy and collection of it . . ."

State ex rel. Broughton v. Oliver, 273 Mo. 537, 201 S. W. 868, was an action by the collector of New Madrid County to collect assessments levied in a drainage district. The cause reached the Springfield Court of Appeals and the court transferred it to the Supreme Court on the theory that the construction of the revenue laws of the State was involved. [State ex rel. v. Oliver, 186 Mo. App. 272, 172 S. W. 75.] This court held that a construction of a *state* revenue law was not involved, and transferred the cause back to the Court of Appeals. In ruling the question of jurisdiction the court said (273 Mo. 537, 201 S. W. l. c. 870):

"When the Constitution speaks of the 'revenue laws of this State,' as it does in Section 12 of Article 6, supra, it has reference to that body of laws by which funds for public governmental purposes are raised, and not to that law or body of laws by which are authorized the assessment of benefits to meet the expenses of given improvements. In other words, the two purposes make up separate schemes: (1) Revenues for public governmental purposes, and the assessment, collection, and expenditure thereof; and (2) special assessments and their collection and expenditure. It is to the first class supra that the constitutional provision under review applies, and not to the latter."

The above sections of the statute relative to the tax books, assessments, *land descriptions,* etc., are certainly a part of that body of State laws by which funds for general governmental purposes are raised, hence we rule that "the construction of the revenue laws of

"the State" is involved in this cause, and that this court has jurisdiction of the appeal.

 Are the facts sufficient to support the judgment? There was, what we may term, a typographical error in the petition, otherwise the description therein, in effect, conformed to the description in the deed record introduced in evidence. Respondent, it would seem, proceeded at the trial on the theory that the State had a lien for taxes on the land, regardless of the description on the assessor's books, or on the collector's books, or in the notice of sale, and that if the land was correctly described in the petition and then it was shown by oral evidence that such land was, in fact, the land owned by defendant, that such was sufficient and would cure any defect in description on the tax books or in the notice of sale.

The State's lien for taxes "does not accrue and become a fixed encumbrance until the amount of the tax is determined by an annual assessment of the land and an annual levy of the tax." [McAnally v. Little River Drainage District, 325 Mo. 348, 28 S. W. (2d) 650; Sec. 9747, R. S. 1929, Mo. Stat. Ann., sec. 9747, p. 7868.]

State ex rel. Flentge v. Burroughs et al., 174 Mo. 700, 74 S. W. 610, was an action "for back taxes." The tax bill described the land as "pt. out lot 54, survey 2199." It was held that such description would not support a judgment for taxes, and that a correct description in the petition would not validate or cure such description. [See also State ex rel. Wyatt v. Wabash Railroad Co. et al., 114 Mo. 1, 21 S. W. 26; State ex rel. Ward v. Linney, 192 Mo. 49, 90 S. W. 844; State ex rel. Smith v. Williams et al. (Mo.), 216 S. W. 535; State ex rel. Ross v. Lamb (Mo.), 25 S. W. (2d) 83.]

It is clear that under the law, prior to the enactment of the Jones-Munger Act, a valid judgment for taxes could not have been obtained on the description here concerned, and if a valid judgment for taxes could not have been obtained, then certainly no one, under the old law could have interfered with defendant's removal of his house on the ground that such would jeopardize the collection of taxes against the tract upon which the house stood. And the Jones-Munger Act, as to the effect of a bad description, is no different than the old law. Section 9958b of the act, Laws 1933, page 441, provides that "no sale or conveyance of land for taxes shall be valid . . . if the description is so imperfect as to fail to describe the land or lot with reasonable certainty."

The Jones-Munger Act, Section 9958a, Laws 1933, page 441, provides that "whenever the county collector shall discover, prior to the conveyance of any lands sold for taxes, that the sale was *for any cause whatever*, invalid, he shall not convey such lands; but the purchase money and the interest thereon shall be refunded out of the county treasury to the purchaser; . . ." (italics ours), and section 9958c, Laws 1933, page 441, provides that "if any conveyance for

taxes shall prove to be invalid and ineffectual to convey title because *the description is insufficient,* or for any other cause than the first two enumerated (not applicable here) in the preceding section (Sec. 9958b) the lien which the state has on such lands shall be transferred to and *vested in the grantee,* his heirs and assigns, who shall be entitled *to a lien on such land* for the amount of taxes, interest and penalty, legally due thereon at the time of such sale, with interest, together with the amount of all subsequent taxes paid, with interest, and such lands shall be bound for the payment thereof'' (italics ours).

Section 9957a of the act, Laws 1933, page 438, provides for the deed by the county collector when that stage is reached, and this section sets out the form for such deed. Section 9962c, Laws 1933, page 445, provides that ''any person holding any deed of lands or lots executed by the county collector for the non-payment of taxes, may commence a suit in the circuit court of the county where such lands lie, to quiet his title thereto,'' and that ''the court shall examine into the facts, and if upon the hearing of such cause it shall appear that the complainant's title was or is invalid *for any cause,* such suit shall not be dismissed by the court, but the court . . . where the complainant's title was *invalid for defect or uncertainty of* description shall ascertain the amount due the complainant, for principal and interest, to be computed at not to exceed ten per cent per annum, and from whom due, and shall decree the payment thereof within a reasonable time by the owner of such land . . . and in default thereof (payment) shall direct that such . . . land or lot be sold therefor, and that the equity and right of redemption . . . shall be forever closed. . . .'' (Italics ours.)

Whatever rights and remedies may be vouchsafed by the law last above quoted, to one who holds a collector's deed, under the Jones-Munger Act, and where the title is ''invalid for defect or uncertainty of description,'' are not involved here.

The judgment should be reversed and it is so ordered. *Hyde* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.