P. M. KENNEN, MAUDE KENNEN WADDOCK, K. G. KENNEN, A. L. KENNEN and SARAH E. PIERCE, an insane person, by W. S. ELLER, her guardian and curator, v. LESTER H. McFARLING, ELSIE Mc-FARLING, his wife, J. E. MOLLET and JOE HATCHER, County Collector of Audrain County, Missouri, Appellants.—No. 38139.—165 S. W. (2d) 681.

Division One, November 10, 1942.

*Don C. Carter* for appellants.

HYDE, C.—This is an action in equity to set aside a collector's deed for land sold under the Jones-Munger Tax Law. (Laws 1933, p. 425; Art. 9, Chap. 74, R. S. 1939.) The trial court entered a decree of cancellation and defendants (claiming under the deed) have appealed.

On the first Monday in November of 1940, the collector of Audrain County sold the land in question for nonpayment of taxes for the years 1933 to 1937 inclusive. This land had been offered for sale by the collector on the first Monday in November, both in 1938 and in 1939, for the nonpayment of these taxes, and no bid was made at either time sufficient to cover the amount of delinquent taxes then due, with interest, penalty, and costs. On November 4, 1940, at the third offering of said real estate for the nonpayment of these taxes, the defendents McFarling and Mollet, bid one dollar for said real estate and the land was sold to them for that sum by the county collector. Defendants paid the 1940 taxes.

Plaintiff Sarah E. Pierce had a life estate in the land and was in possession at the time of the sale. The other plaintiffs hold the remainder. They inherited it from E. C. Kennen, who died in February, 1934. The 1938 and 1939 taxes had been paid by the remaindermen prior to the third 1940 sale at which defendants bid. Plaintiffs tendered to defendants $14.83, for the 1940 taxes, the one dollar bid and the sale expenses paid by defendants with 10% interest. They

also tendered to the county $58.62 in full payment of all taxes with interest and penalties from 1933 to 1937 inclusive. The land was advertised thus: "Laddonia, Laddonia Original W½, Lot 7, Block 10." The published notices also showed the amounts required to pay the taxes for each year with penalties added. The description in the collector's deed was: "Original Town Laddonia, Missouri, West one-half (W½) Lot Seven (7) Block Ten (10)." It was shown that the value of the land was more than $500.00.

The decree of the trial court stated the following constitutional grounds for setting aside the collector's deed:

"That Sections 11125-11182, inclusive of the Revised Statutes of Missouri, 1939, and all other Sections of Article IX, Chapter 74, relating to the sale of lands for delinquent taxes, are unconstitutional and void and in violation of Section 30 of Article II of the Constitution of the State of Missouri, and of Amendment XIV to the Constitution of the United States of America, because the provisions in said Statutes purport to authorize the County Tax Collector to usurp and exercise judicial functions and powers by authorizing him to determine: (1) the validity of the tax assessment; (2) that a tax is due, unpaid and delinquent; and (3) to appropriate the land to the State of Missouri and divest the owners thereof, without suit or other due process of law."

These constitutional contentions cannot be sustained. "The property subject to tax or the amount of the tax need not be determined by judicial inquiry, in order to constitute due process." [3 Cooley on Taxation, 2049, Sec. 1013.] "To constitute due process, the matter of assessment need ▮ not ever come before a court, if at some stage in the proceedings the parties affected have an opportunity to be heard." [3 Cooley on Taxation, 2263, Sec. 1118.] "Due process of law under the Fourteenth Amendment does not require judicial proceedings in enforcing a tax." [3 Cooley on Taxation, 2615, Sec. 1326.] "A judgment for the taxes due is not essential, because the proceeding is merely administrative and not judicial in character." [26 R. C. L. 394, Sec. 353.] Furthermore, the United States Supreme Court has said that in assessing taxes the phrase "due process of law" does not "mean by a judicial process," pointing out that "the Nation from whom we inherit the phrase 'due process of law' has never relied upon the courts of justice for the collection of her taxes." [McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335; see also Kentucky Union Co. v. Kentucky, 219 U. S. 140, 55 L. Ed. 137, 31 S. Ct. 171, and cases cited.] Missouri did not provide for a judicial proceeding in the collection of taxes until 1877 (Laws 1877, p. 385); and as late as 1900, it was said that only two other states did make such provision. [Judson's Taxation in Missouri, Chap. 14, pp. 224-225.] Therefore, we cannot uphold the ruling that the Jones-Munger Tax Law violates either the Fourteenth

Amendment or Section 30 of Art. II of our present Constitution, because it provides for a tax sale without suit and judgment in a court.

The constitutionality of the Jones-Munger Tax Law was upheld, against the contention that it violated Section 30 of Art. II of our Constitution because of insufficiency of its provisions for notice of sale, in State ex rel. Karbe v. Bader, 336 Mo. 259, 78 S. W. (2d) 835. This court therein decided that the provisions for notice of sale were ample for due process, saying that ''it (is) sufficient answer to the proposition that the bill is unconstitutional because denying the landowner due process of law, to say that until the notice provided for is given, the collector has no right to sell''; and that the questions raised concerning the notice ''are matters going more to what might be called the workability of the act rather than its constitutionality.'' Clearly, under our system of taxation, there are also ample provisions for notice and opportunity for hearing throughout the whole period of assessing, levying and equalizing taxes. We have a County Board of Equalization to which taxpayers may appeal. [Art. 3, Chap. 74, see Sec. 11004, R. S. 1939.] Our decisions hold that the County Board of Equalization acts judicially; that its findings as to valuations become a part of a final judgment of assessment which it is authorized to make (subject to approval by the State Board of Equalization); and that, if permitted to stand, such findings are res judicata so that they cannot be collaterally attacked. [State ex rel. Johnson v. Merchants' & Miners' Bank, 279 Mo. 228, 213 S. W. 815; State ex rel. Arnold v. McCune (Mo. Sup.), 252 S. W. 657; State ex rel. Ford Motor Co. v. Gehner, 325 Mo. 24, 27 S. W. (2d) 1, and cases therein cited (27 S. W. (2d) l. c. 4); State ex rel. City of St. Louis v. Caulfield, 333 Mo. 270, 62 S. W. (2d) 818.] However, such a final judgment of assessment may be reviewed by the State Tax Commission, subject to the approval of the State Board of Equalization which ''completes the assessment judgment.'' [Brinkerhoff-Faris Trust & Savings Co. v. Hill, 323 Mo. 180, 19 S. W. (2d) 746, 751.] The final assessment judgment may also be reviewed by certiorari on the record proper before the Board. [State ex rel. City of St. Louis v. Caulfield, supra.] It may also be directly attacked by action in equity. [Boonville National Bank v. Schlotzhauer, 317 Mo. 1298, 298 S. W. 732, 55 A. L. R. 489; Brinkerhoff-Faris Trust & Savings Co. v. Hill, 328 Mo. 836, 42 S. W. (2d) 23.] Therefore, viewing the Jones-Munger Tax Law as a part of our whole taxation system, and taking into consideration its provisions for notice of sale, we hold that it is not in conflict with the constitutional provisions invoked, and that it is a valid legislative act.

The trial court's decree stated further grounds for setting aside the collector's deed, as follows:

''That, even assuming Sections 11125-11182, inclusive, of the Revised Statutes of Missouri, 1939, to be constitutional, yet said Collec-

tor's Deed for Land Sold for Delinquent Taxes at Third Sale, dated November 4, 1940, under which defendants Lester H. McFarling, Elsie McFarling and J. E. Mollet claim title is null, void and of no effect for the following reasons, to-wit:

''(a) Because the collector's advertisements and notices of sales failed to comply with the requirements of Sections 11125, 11126, 11127, 11129 and 11130 in that said advertisements and notices stated and recited that tax certificates on the lands therein described were to be sold instead of stating that the lands and lots would ▮▮▮ be sold, subject to such equities of redemption as are provided by said statutes.

''(b) Because the collector's advertisements and notices published in the years 1938, 1939 and 1940 failed to properly describe the West One-half (½) of the above described premises.

''(c) Because the deed executed by the collector does not substantially comply with the requirements of Section 11150, Revised Statutes of Missouri, 1939; and because said deed does not purport to be from the State of Missouri, but purports to be a deed from defendant Joe Hatcher, Collector of Audrain County, Missouri.

''(d) Because the One Dollar consideration paid by defendants Lester M. McFarling and J. E. Mollet is and was so grossly and shockingly inadequate and unconscionable as to constitute in and of itself a badge of fraud, the West One-half (½) of said premises having a value, at the time of the tax sale, in excess of Five Hundred Dollars.''

While the notices of sale could have been better worded and the land could have been more clearly described, nevertheless we do not see how anyone could have been misled or could have misunderstood the purpose of the tax sales or what land was to be sold. The deed does not follow the form set out in Section 11150, R. S. 1939, but we need not decide whether or not this irregularity should alone require a resale, or whether it might be remedied by a subsequent deed, because the fourth ground assigned for setting aside the sale should be sustained. This must be done under the decisions of this court in Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S. W. (2d) 813; Mahurin v. Tucker (Mo. Sup.), 161 S. W. (2d) 423; and J. C. Nichols Inv. Co. v. Roorbach (Mo. Sup.), 162 S. W. (2d) 274. Defendants say that these cases destroy the Jones-Munger Tax Law as an effective means of collecting taxes. However, Section 11131, R. S. 1939, provides for a method for the county to protect taxes and prevent losses on inadequate bids. The equities here are much stronger in favor of plaintiffs than in any of the above cited cases. Here is a case where a life tenant of unsound mind (but not legally so declared until after the sale) was in possession; and in which the owner of the remainder died about the time of the first (1933) delinquency. After his estate had been settled in the probate court, his wife and children paid the 1938 and 1939 taxes, apparently under the impression that the

earlier taxes had been paid. When the property was later sold for the delinquent 1933 to 1937 taxes, defendants made no actual substantial bid but only a nominal bid of one dollar. This was less than 1/60 of the taxes due, with costs, and less than 1/500 of the value of the property. Certainly, under these circumstances, the consideration "was so grossly and shockingly inadequate and unconscionable" as to warrant a finding of fraud in law; and we hold that the Chancellor properly set aside the sale.

The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur except *Hays, J.,* absent.