**STADIUM WEST PROPERTIES, L.L.C., Respondent,**

v.

**Cebie Hassan JOHNSON, Appellant.**

**No. WD 63020.**

Missouri Court of Appeals, Western District.

March 16, 2004.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 2004.

Application for Transfer Denied May 25, 2004.

Thomas M. Schneider, Columbia, MO, for appellant.

Duane E. Schreimann, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Chief Judge, HAROLD L. LOWENSTEIN, Judge and ROBERT G. ULRICH, Judge.

JOSEPH M. ELLIS, Chief Judge.

This is an action to quiet title brought under § 527.150, RSMo 2000, in which the parties, Cebie Hassan Johnson ("Johnson") and Stadium West Properties, L.L.C. ("Stadium West"), litigated the validity of a tax sale resulting in the issuance of a Collector's Deed for Taxes ("collector's deed" or "tax deed") to Johnson by the Boone County Collector of Revenue ("collector"). The trial court quieted title in Stadium West, ruling that the sale was illegal and that the collector's deed was void since the notice of sale published by the collector contained an inadequate description of the real estate in question. Johnson timely appealed the trial court's judgment, and we affirm.

### Facts and Procedural History

The trial court decided this case on what were almost entirely stipulated facts. Stadium West acquired its interest in the subject Boone County real estate from Scott W. Gibson ("Gibson") by way of a general warranty deed dated December 27, 1995. Two separate parcels of real estate were conveyed by Gibson to Stadium West, for which it paid Gibson $16,571.15. The warranty deed, which the parties have stipulated accurately describes the properties at issue in this case,

described the first of these two parcels in following manner:

Part of the Southeast Quarter of the Northwest Quarter of Section Twenty-four (24), Township Forty-five (45) North, Range Twelve (12) West, Boone County, Missouri, more particularly described as follows:

From the southeast corner of the Northwest Quarter of Section 24; thence N. 01 degree 13′19″ E. along the Quarter Section Line, 167.14 feet to a point in the center of an old abandoned county road and the POINT OF BEGINNING for this description; thence Northwesterly, along the center of said old abandoned county road the following courses: N. 68 degrees 38′18″ W. 95.32 feet; thence N. 75 degrees 01′19″ W. 249.87 feet; thence N. 65 degrees 31′01″ W., 128.70 feet; thence N. 50 degrees 26′18″ W. 197.44 feet; thence N. 49 degrees 59′54″ W. 101.31 feet; thence N. 58 degrees 26′12″ W. 299.15 feet; thence N. 56 degrees 29′07″ W. 262.82 feet to a point on the west line of the Southeast Quarter of the Northwest Quarter of said Section 24; thence leaving the center of the old abandoned county road, N. 00 degrees 38′04″ W. along the Quarter Quarter Section Line, 40.70 feet to a point 330.00 feet south of the northwest corner of the Southeast Quarter of the Northwest Quarter of said Section 24; thence S. 89 degrees 56′28″ E. parallel the North line of said Quarter Quarter Section 660.00 feet; thence N. 00 degrees 38′04″ E. parallel to the west line of said Quarter Quarter Section, 330.00 feet to a point on the north line of the Southeast Quarter of the Northwest Quarter of said Section 24; thence S. 89 degrees 56′28″ E. along the Quarter Quarter Section line, 105.84 feet to point on the westerly line of U.S. Highway 63; thence Southerly, along the westerly line

of said U.S. Highway 63, on a curve to the right, having a radius of 2,779.94 feet, an arc distance of 822.95 feet (the chord of said curve being S. 36 degrees 47′25″ E. 819.95 feet); thence S. 28 degrees 18′35″ E. along the westerly line of said U.S. Highway 63, 45.64 feet to a point on the east line of the Southeast Quarter of the Northwest Quarter of said Section 24; thence S. 01 degrees 13′19″ W. along the Quarter Section Line, 445.52 feet to the POINT OF BEGINNING.

The warranty deed described the second parcel of land in this way:

PARCEL 2: Part of the Northeast Quarter of Section 24, Township 45 North, Range 12 West, Boone County, Missouri, more particularly described as follows:

From the southeast corner of the Northwest Quarter of said Section 24; thence N. 01 degree 13′19″ E. along the Quarter Section Line, 1,309.10 feet to the northeast corner of the Southeast Quarter of the Northwest Quarter of said Section 24; thence S. 89 degrees 56′28″ E. along the Quarter Quarter Section Line, 16.32 feet to a point on the easterly line of U.S. Highway 63, and the POINT OF BEGINNING for this description; thence continuing S. 89 degrees 56′28″ E. along the Quarter Quarter Section Line, 44.97 feet to the northwest corner of an unrecorded Property Boundary "AGREEMENT" Survey by David A. Brown, Mo. R.L.S. #103, dated November 14, 1958; thence S. 89 degrees 14′51″ E. along the north line of said "AGREEMENT" Survey 1,247.36 feet to the northeast corner thereof; thence S. 03 degrees 21′43″ W. along the east line of said "AGREEMENT" Survey, 408.70 feet to the Southeast corner thereof; thence N. 89 degrees 21′56″ W. along the south line of said "AGREEMENT" Survey, 921.06 feet to a point on the easterly line of the aforesaid U.S. Highway 63; thence Northerly, along the easterly line of said U.S. Highway 63, the following courses: Northerly, on a curve to the left, having a radius of 3,246.94 feet, and arc distance of 108.20 feet (the chord of said curve being N. 29 degrees 40′25″ W. 108.19 feet); thence N. 36 degrees 40′48″ W. 258.22 feet; thence N. 50 degrees 53′28″ W. 161.86 feet; thence N. 51 degrees 27′08″ W. 17.72 feet to the POINT OF BEGINNING.

The warranty deed also specifically excluded ownership of "MINERAL RIGHTS RESERVED AND EXCEPTED IN PRIOR CONVEYANCES" as to both parcels.[1]

Due to an oversight by the closing agent, Guaranty Land Title, the Boone County Recorder of Deeds did not record the warranty deed. Since the closing agent failed to ensure that the warranty deed was recorded on a timely basis, no tax bills were ever mailed to Stadium West, which did not pay the 1996 and 1997 real estate taxes assessed against the properties.[2] The collector placed the real estate in question on Boone County's "land

---

1. At trial, Stadium West's witness Elliott E. "Bud" Farmer, Jr. ("Farmer") testified that a third party holds the mineral rights to the subject real estate, which borders a quarry owned and operated by Stadium West. For this reason, Farmer explained, Stadium West (which owns several other pieces of Boone County real estate) purchased these properties not for their value as future quarry sites, but to serve as a "buffer zone" around its existing quarry operations to prevent future disputes with adjoining landowners over potential dust and noise issues.

2. The tax bills were evidently mailed to Gibson, the last owner of record, who, for whatever reason, simply ignored them without notifying either county tax officials or Stadium West.

delinquent list" and began preparations for a tax sale. The "NOTICE OF TAX CERTIFICATE SALE," which was published on three occasions in late July and early August 1998 and stated that the "[s]aid lots and lands ... offered for sale" were "situated in Boone County, Missouri," described the subject real estate as follows:

> US 63 NEPT SE NW / NPT SW NE S24
>
> T45 R12 ACREAGE: 27.00 1996 $72.88
>
> 1997 $19.68 $92.56 GIBSON SCOTT W

A public auction took place on August 24, 1998, and Johnson purchased the real estate for the sum of $7,100.00. After receiving two Tax Sale Certificates of Purchase from the collector, Johnson took the subsequent steps necessary to perfect his inchoate interest in the properties, which included waiting the necessary two years; carrying out his statutory obligation to notify all persons and entities holding a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate at the time of the notice, by certified mail, of their right of redemption;[3] and filing an application for a collector's deed when none of the notified persons or entities sought to redeem the properties within ninety days. *See, e.g., M & P Enters. v. Transamerica Fin. Servs.*, 944 S.W.2d 154, 156–57 (Mo. banc 1997). On January 5, 2001, the collector issued Johnson a tax deed, which described the real estate conveyed in the following manner:

> Parcel # 27–600–24–00–002.00
>
> US 63 Acreage 27.00 NEPT SE NW / NPT SW NE
>
> Sec 24 Twp 45 Rge 12

Boone County, Missouri

The tax deed issued to Johnson was recorded earlier the same day, in Book 1678, Page 901. At some point thereafter, one of Stadium West's employees happened to see Johnson walking around one of the parcels. He questioned Johnson, who told him that he (Johnson) owned the property. Stadium West quickly commenced an investigation into the matter, after which it discovered that this and the other parcel it had bought from Gibson had been sold at a tax sale in August 1998, and that the general warranty deed it had received from Gibson had never been recorded. Stadium West recorded the general warranty deed from Gibson on May 9, 2002 (in Book 1915, Page 157), and filed the present action in July 2002, seeking to set aside the tax sale and the resulting collector's deed issued to Johnson and to allow it to redeem the subject real estate.

After conducting a brief trial in 2003 during which it heard testimony from two witnesses (Farmer and Johnson), the trial court entered a judgment voiding the tax sale and resulting collector's deed and quieting title to the real estate in Stadium West based on the facts stated above and these conclusions of law:

> [T]he legal description appearing in the Collector's Notice of Tax Certificate Sale failed to describe the property in question with reasonable certainty.... The accurate description contained in the Parties' Stipulation is in excess of some 50 single spaced, typed lines. The Collector's Notice of Tax Certificate Sale's description comprised 2 lines. Further, [Johnson] contends that the 'owner of record' of the property, 'Scott W. Gibson' is a point of reference for locating

---

**3.** The record shows that the property descriptions contained in the redemption notices mailed out by Johnson were not the highly abbreviated versions set forth in the collector's notice of sale, but fully detailed metes-and-bounds versions almost identical to those contained in the then-unrecorded general warranty deed from Gibson to Stadium West.

the property. It is true that 'Gibson Scott W' is stated at the tail of the two line description but nowhere in the tax list is there any indication of what relationship 'Gibson Scott W' bears to the property. Is he a person who holds a publicly recorded deed of trust, mortgage, lease, lien or claim upon the real estate or what? [Johnson] further contends that 'ACREAGE 27.00' is a point of reference for locating the property. Nowhere in the stipulated legal description of the property is there any reference to the property's acreage. Finally, the two line description generally described property in the 'NEPT,' reasonably translated to mean the 'northeast part' and likewise the 'NPT,' reasonably translated to mean the 'north part.' Query: if you could find the tracts of land in question, what 'parts' were being sold? Though, arguably, none of these inadequacies taken alone would amount to a lack of reasonable certainty, taken together, they do. The description was neither reasonably certain nor full as required by the applicable sections of Chapter 140 RSMo.

The trial court also imposed a lien on the real estate to secure payment of the redemption sum owed Johnson by Stadium West, which included: (1) the 1996 and 1997 real estate taxes, penalties and costs paid by Johnson at the tax sale, plus statutory interest of 10% per annum from and after August 24, 1998; (2) the real estate taxes paid by Johnson for the tax years 1998–2002, plus statutory interest of 8% per annum from and after the dates Johnson paid those taxes; and (3) the sum of $1.25, all pursuant to the applicable provisions of Chapter 140. Upon receipt of Stadium West's payment of the above-

mentioned redemption sum, the trial court ordered Johnson to formally acknowledge payment thereof by filing an appropriate instrument and further ordered Johnson to then execute and deliver to Stadium West a quitclaim deed properly describing the real estate. Finally, the trial court awarded Johnson the excess sale proceeds from the August 24, 1998 tax sale and ordered the Boone County Treasurer to remit those proceeds to Johnson forthwith.[4]

### Standard of Review

This quiet title action was tried to the court, so our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *Kohler v. Bolinger*, 70 S.W.3d 616, 619 (Mo.App. W.D.2002). Thus we must affirm the trial court's judgment if it is supported by substantial evidence, is not against the weight of the evidence, and the trial court did not erroneously declare or apply the law. *Id.* "Our primary concern is the correctness of the trial court's judgment, not the route it took to get to that result, and therefore, we will affirm the judgment if it is supported by any reasonable theory, even if different from that expressed by the trial court." *SD Invs., Inc. v. Michael–Paul, L.L.C.*, 90 S.W.3d 75, 81 (Mo.App. W.D.2002).

### Analysis

In his first point relied on, Johnson argues that the trial court erred in entering its judgment invalidating the tax sale and the resulting collector's deed on the ground that the notice of sale published by the collector contained an inadequate legal description of the subject real estate because the trial court erroneously applied the law to the facts in that since Stadium West admitted that none of its members or

---

4. Johnson lodges no complaint on appeal as to any of these equitable remedial orders, which were clearly designed to restore the

*status quo ante* under Chapter 140 and § 527.150.

representatives ever saw the legal description published by the collector, Stadium West was not misled or confused by it and, therefore, suffered no legally cognizable prejudice. He further claims that inasmuch as Farmer, who was Stadium West's sole witness at trial, "admitted that neither he nor any other representative of [the] company ever saw the published notice before this lawsuit was filed," Stadium West "obviously was not misled by and did not rely upon any aspect of the published notice. No harm, no foul." We disagree.

To begin with, Stadium West correctly points out that the transcript shows that Farmer made no such admission, but instead merely testified that, prior to the tax sale, *he did not know* if anyone from Stadium West ever saw or was misled by the published notice of sale. While Farmer could not say for certain whether any of Stadium West's employees or representatives did or did not see the published notice, his testimony can hardly be viewed as an "admission" that no one associated with Stadium West ever saw the notice published by the collector or that they were "obviously" not misled by it, as claimed by Johnson.

More importantly, though, as pointed out by Stadium West, Johnson's brief cites not a single Missouri case holding that a plaintiff who seeks to have a tax sale and resulting collector's deed set aside on the grounds that the collector's notice of sale contains a deficient description of the property to be sold must prove his actual knowledge of and detrimental reliance on the defective notice to be entitled to relief. While this lack of authority is excusable since Johnson is raising what appears to be an issue of first impression in this state, we think that what applicable case authority there is weighs strongly against the actual knowledge and detrimental reliance requirement urged by Johnson.

In his brief, Johnson cites only one relevant case in support of his position: *U.S. v. Certain Land in Wayne County, Mo.,* 70 F.Supp. 730 (E.D.Mo.1947), a federal decision he also presented to the trial court for its consideration. That case involved competing claims to the proceeds of a court-administered fund into which the United States had paid compensation after condemning the subject real estate for use as a wildlife game refuge. *Id.* at 731. There were originally three claimants to the fund, but before trial, counsel for two of them announced they had settled their conflicting claims, leaving them on one side and a Mr. Arthur T. Brewster on the other. *Id.* Among other things, Brewster claimed that the tax deed under which one of the opposing parties claimed its interest was invalid since the collector's published notice of sale was defective. *Id.* at 732. The district court decided the question as follows:

> Brewster questions the notice of sale as failing to comply with Section 11126, R.S.Mo.1939, Mo. R.S.A. [now § 140.170]. We think the particulars on which the notice of sale is criticized [5] are of the same character as the Supreme Court of Missouri had under consideration in *Kennen v. McFarling,* 350 Mo. 180, 165 S.W.2d 681. The test stated by the Court in the *Kennen* case is could '... anyone ... have been misled or ... have misunderstood the purpose of the tax sales or what land was to be sold.' (loc. cit. 684)

> Brewster does not charge the notices were misleading or that the errors complained of caused anyone to misunderstand the purpose of the tax sale or

5. The court did not further explain what those "particulars" were.

what land was to be sold. No such attack could be sustained.

*Id.*

While this language lends some support to Johnson's argument, a review of the *Kennen* case, upon which the federal district court relied, reveals that to the extent our Supreme Court even set forth a "test" for notice and reliance in *Kennen*, it was objective, not subjective: "While the notices of sale could have been better worded and the land could have been more clearly described, nevertheless we do not see how anyone could have been misled or could have misunderstood the purpose of the tax sales or what land was to be sold." *Kennen v. McFarling*, 350 Mo. 180, 165 S.W.2d 681, 684 (1942). Likewise, in *Beldner v. General Electric Co.*, 451 S.W.2d 65, 77 (Mo.1970), the Court made a similar observation, noting that the question before it was "the effect of the publication of one notice properly describing the property to be sold for delinquent taxes, followed by two notices that do not properly describe the property to be sold and which are insufficient to advise the public or to enable one to reasonably identify and locate the property." A bit later in its opinion, the Court in *Beldner* observed: "Anyone interested in this sale or in the property to be sold would reasonably expect that the last notice published would contain a correct description of the lands remaining to be offered at the tax sale." *Id.* at 78. Thus to the extent the Court in *Beldner* intended to formulate a "test," it would be whether any member of the sale notice's target audience could reasonably have been misled by or misunderstood what land was to be sold and whether the notice contained sufficient information for one to reasonably identify and locate the property.

In contrast, our Supreme Court has spoken in much more direct, certain, and convincing terms as to the obligations of county collectors and tax sale purchasers like Johnson. A tax sale conducted by a county collector under what is now Chapter 140 "is a proceeding in rem intended to be binding on all persons interested in the property, whether as owner or lien holder." *State ex rel. McGhee v. Baumann*, 349 Mo. 232, 160 S.W.2d 697, 699 (1942). "It has universally been the rule that statutory requirements in proceedings in rem for the sale of land for delinquent taxes must be complied with strictly." *Wates v. Carnes*, 521 S.W.2d 389, 390 (Mo. 1975). Indeed, if "the notice of sale does not strictly follow the statutory requirements concerning the contents of the notice of sale," the subsequent county tax sale is void. *Lohr v. Cobur Corp.*, 654 S.W.2d 883, 887 (Mo. banc 1983) (Houser, Sr.J., concurring). The reason for this rule was explained by the Missouri Supreme Court in *Schlafly v. Baumann*, 341 Mo. 755, 108 S.W.2d 363 (1937), as follows:

> Exercise of the official action here involved is in derogation of private rights of property, disturbs vested rights therein, and deprives persons of their ownership of property; and this, under the Jones–Munger Act, by *ex parte* proceedings of a rather drastic and summary nature, based upon constructive notice.

*Id.* at 366.[6]

In light of our Supreme Court's repeated and emphatic commands that

---

6. "The Jones–Munger Act (chapter 140, RSMo) provides for the annual sale of real property on which payments of property taxes have been delinquent." *M & P Enters.*, 944 S.W.2d at 156. This (literally) ground-breaking legislation, which "effected a radical change in the method of foreclosing the state's lien for delinquent taxes by suit in a court of competent jurisdiction," was enacted in 1933. *Schlafly*, 108 S.W.2d at 366; *see*

county collectors and tax sale purchasers follow the strict letter of Missouri law governing such sales, we seriously doubt that it intended, in *Kennen* and *Beldner*, to impose an actual knowledge/detrimental reliance requirement on delinquent taxpayer-landowners divested of their legal title thereby. We therefore hold that Stadium West was not required to prove it had actual notice of or detrimentally relied on the property description in the collector's published notice of sale as a precondition of receiving equitable relief under § 527.150. Point denied.

In his second point relied on, Johnson argues that the trial court erred in entering its judgment invalidating the collector's deed on the ground that the notice of sale published by the collector contained an inadequate legal description of the subject properties because the judgment was either against the weight of the evidence or erroneously applied the law to the facts in that a legal description is sufficiently definite if one reasonably skilled in determining land locations can locate the real estate with the use of extrinsic facts and the information contained in the published notice indicated the section, township and range of the subject real estate, its acreage, and the fact that it was located on the U.S. Highway 63 corridor, as well as the name of its record owner, who had conveyed the property to Stadium West.

The legal framework governing this aspect of the case is built upon several interrelated Missouri statutes, most of which were new in the Jones–Munger Act of 1933. The foundational statute is § 140.530, RSMo 2000, which says, in relevant part:

No sale or conveyance of land for taxes shall be valid if at the time of being listed ... the description is so imperfect as to fail to describe the land or lot with reasonable certainty[.]

*See also* § 140.150.2, RSMo 1994, which states, in relevant part:

No real property shall be sold for state, county or city taxes without judicial proceedings, unless the notice of sale contains the names of all record owners thereof, or the names of all owners appearing on the land tax book and all other information required by law.[7]

The "other information required by law" to be contained in a collector's notice of sale is specified in two other statutes. As applicable here, the first of these statutes, § 140.030, RSMo 1994, provides:

Whenever any collector shall be unable to collect any taxes specified on the tax book, having diligently endeavored and used all lawful means to collect the same, he shall make ... [a] 'land delinquent list', in which shall be stated the taxes on lands and town lots where taxes have not been collected, with a full de-

---

*also* 1933 Mo. Laws 425–449. "Before the Jones–Munger Act, the lien for taxes was foreclosed by suit. If inferior lien holders were made parties to the suit, their liens were extinguished. Jones–Munger substituted an administrative proceeding for the judicial foreclosure and instead of being made parties to the suit, lienholders are notified by publication." *McMullin v. Carter*, 639 S.W.2d 815, 817–18 (Mo. banc 1982) (internal quotation marks and citations omitted).

**7.** Art. 10, § 13 of the Missouri Constitution contains a nearly identical provision, which

was adopted in 1945: "No real property shall be sold for state, county or city taxes without judicial proceedings, unless the notice of sale shall contain the names of all record owners thereof, or the names of all owners appearing on the land tax book, and all other information required by law." For jurisdictional purposes, we note that this case does not require the construction of a revenue law and does not present even a colorable constitutional issue, much less a real and substantial one requiring resolution by our Supreme Court.

scription of said lands and lots, and the amount of taxes due thereon, set opposite each tract of land or town lot[.]

The relevant portions of the second statute, § 140.170, RSMo 1994, are:

1. The county collector shall cause a copy of the list of delinquent lands and lots to be printed in some newspaper of general circulation published in the county, for three consecutive weeks, one insertion weekly, before the sale, the last insertion to be at least fifteen days prior to the fourth Monday in August.

2. In addition to the names of all record owners or the names of all owners appearing on the land tax book it is only necessary in the printed and published list to state in the aggregate the amount of taxes, penalty, interest and cost due thereon, each year separately stated, and the land therein described shall be described in forty acre tracts or other legal subdivisions, and the lots shall be described by number, block, addition, etc....

Finally, although it is quite lengthy and we do not set it forth in full, § 140.180, RSMo 1994, authorizes the use of certain letters, figures, and characters as shorthand in "all advertisements, notices, lists, records, certificates, deeds or other papers, required to be made by or under any of the provisions" of Chapter 140. § 140.180.1.[8]

At the outset, we note that a tax deed which has been properly "recorded in the recorder's office before delivery" as provided in § 140.460.1, RSMo 2000, is to be considered "prima facie evidence ... of the regularity of the sale of the premises described in the deed, and of the regularity of all prior proceedings, ... and prima facie evidence of a good and valid title in fee simple in the grantee of said deed[.]" § 140.460.2, RSMo 2000. As the Missouri Supreme Court observed in *Mitchell v. Atherton*, 563 S.W.2d 13, 17–18 (Mo. banc 1978), this means that such a deed is also "prima facie evidence of notice in compliance with the law because notice and sale would be 'prior proceedings' under sec. 140.460." Of course, this does not prevent an opposing party from attempting to overcome this prima facie evidence of regularity by offering its own evidence at variance with the title, *id.* at 18, which is exactly what Stadium West did here. *See, e.g., Nole v. Wenneker*, 609 S.W.2d 212, 215 (Mo.App. W.D.1980).[9]

The language of § 140.530 "quite plainly indicates that the failure of a description to describe the land in question with reasonable certainty is a sufficient condition for invalidity[.]" *McCready v. Southard*, 671

---

**8.** We note that several of the statutes we have quoted, including §§ 140.150 and 140.170, were substantially modified in 2003. However, as those amendments occurred one or more years after the collector published the notice of sale and Stadium West filed its petition in the case *sub judice,* the amended statutes have no application here.

**9.** We note that in *Adams v. Gossom,* 228 Mo. 566, 129 S.W. 16, 21 (1910), the Court observed: "[I]t is settled doctrine that a purchaser at a tax sale, who has notice of an unrecorded deed, takes subject to the rights of the grantee in such deed since he stands charged with the knowledge that the apparent record owner was not the real owner." *See*

also *Ortmeyer v. Bruemmer,* 680 S.W.2d 384, 394–95 (Mo.App. W.D.1984) (one who purchases realty subject to a prior but unrecorded conveyance to another takes free of that interest only if he was a bona fide purchaser for value and did not have *actual notice* of the unrecorded conveyance). In his answer to Stadium West's petition, Johnson expressly invoked this principle as an affirmative defense, although he later abandoned it by failing to offer any evidence at trial on the matter. For its part, Stadium West does not claim Johnson had actual knowledge of the unrecorded conveyance from Gibson to Stadium West.

S.W.2d 385, 389 (Mo.App. S.D.1984). However, that language does *not* mean "that if the description *does* describe the land with reasonable certainty it will ipso facto be valid," because the other statutes set forth above may also come into play. *Id.* (emphasis in original). In *Costello v. City of St. Louis,* 262 S.W.2d 591 (Mo. 1953) (overruled on other grounds in *Powell v. County of St. Louis,* 559 S.W.2d 189, 196 (Mo. banc 1977)), the Missouri Supreme Court explained the relationship between the reasonable certainty standard set forth in § 140.530, the more particular requirements of §§ 140.030 and 140.170, and the abbreviations authorized by § 140.180:

> Section 140.030 requires that the Collector's land delinquent list shall set out 'a full description of said land and lots' upon which taxes are delinquent. Section 140.170 provides that the Collector shall cause the publication of the list of delinquent lands and lots, 'and the land therein described shall be described in forty acre tracts or other legal subdivision, and lots shall be described by number, block, addition, etc.' Section 140.530 provides that, 'No sale or conveyance of land for taxes shall be valid if at the time of being listed ... the description is so imperfect as to fail to describe the land or lot with reasonable certainty.'

> \* \* \*

> Section 140.180 authorizes the use of certain abbreviations in land descriptions. We are mindful of the general rule that if the description is sufficiently definite and certain to enable one reasonably skilled in such matters to locate the land that it will be held to be adequate. But that rule is modified by the plain requirements of the above statutes that there be a full description by correct lot number, block and addition, and all with reasonable certainty. The description must be accurate, correct and definite even though abbreviations are authorized.... 'Full' as used in Section 140.030 quite obviously means complete, entire, without abatement, perfect, but allowing of course for the use of the abbreviations authorized by Section 140.180. 'Described by number, block, addition, etc.,' as required by Section 140.170, requires that the lots shall be correctly given and referred to by number, block and addition, or subdivision.

262 S.W.2d at 594–95.

■ Thus "a notice of tax sale must not only comply with the specific requirements of §§ 140.030 and 140.170 but it must also describe the property with reasonable certainty" under § 140.530. *McCready,* 671 S.W.2d at 389 (citing *Costello,* 262 S.W.2d at 594–95).[10] This is not an idle or purely academic observation, as it "[i]t is readily conceivable that in a given situation the former circumstance may obtain while the latter may not." *Id.* Indeed, we think this is precisely such a case. That is to say, we think that while the notice of sale published by the collector arguably met the particular requirements of §§ 140.030,

---

**10.** Of course, this reasonable certainty requirement applies not only to notices of sale published by the collector before tax sales, but also to the terms of collector's deeds issued after such sales. *See, e.g., Mason v. Whyte,* 660 S.W.2d 383, 386 (Mo.App. E.D.1983). This is because, by its express terms, the statute applies to both sales *and* conveyances of land for satisfaction of back taxes. As the adequacy of the property descriptions in the tax deed received by Johnson (which were the same as those contained in the notice of sale except for the addition of "Parcel # 27–600–24–00–002.00", the meaning or significance of which does not appear in the record) was neither raised by Stadium West in its pleadings nor tried by consent, we do not further consider that issue.

140.170.2, and 140.180, it nevertheless failed to meet the reasonable certainty standard set forth in § 140.530.

In determining the legal sufficiency of the property descriptions contained in the notice of sale published by the collector in this case, we find the Missouri Supreme Court's decision in *State ex rel. Martin v. Childress*, 345 Mo. 495, 134 S.W.2d 136 (Mo.1939) particularly instructive. In *Childress*, the record owner of a half-acre tract of Douglas County real estate, Mr. Childress, failed to pay the property taxes that had been assessed thereon. 134 S.W.2d at 137. The Douglas County Collector of Revenue, Mr. Martin, published a notice of sale containing a description of the real estate, which he planned to auction off at the upcoming county tax sale. *Id.* The land in question had a large building (Childress' house) on it, which substantially increased the value of the tract. After learning that Childress had threatened to remove the house from the property, Martin sought a temporary injunction preventing him from doing so, claiming, *inter alia,* that if Childress was allowed to move the house off the land, the land would then be worth less than the amount of back taxes owed by Childress. *Id.* The trial court granted the temporary injunction, which it later made permanent. *Id.* Childress appealed, arguing that since the property descriptions contained in both the collector's land delinquent list and the

pending notice of sale were "wholly insufficient to support a valid [tax] sale," they were also insufficient to support the injunction. *Id.* at 138.

Our Supreme Court agreed with Childress and reversed the trial court's judgment granting the injunction. *Id.* at 140. The Court began its analysis by noting that in the deed originally issued to Childress by the land's previous owner, the property was correctly described as follows:

[B]eginning on rock corner on east line of NW 1/4 NW 1/4, Sec. 23, Twp. 27, range 17, 34 rods and 7 ft. north of SE corner of said NW 1/4 NW 1/4; thence west 7 rods; thence south 11 and 3/7 rods; thence east 7 rods; thence north 11 and 3/7 rods to place of beginning, containing 1/2 acre.

*Id.* at 137. The Court then observed that in both the collector's land delinquent list and the collector's notice of sale, the property to be sold was described in this abbreviated manner: "[P]art of NW 1/4 NW 1/4, Sec. 23, Twp. 27, range 17." *Id.*

The Court first rejected the collector's contention that, because the land was correctly described in his petition for injunctive relief and he had shown at trial that it was, in fact, the land owned by Childress, "any defect in [the] description on the tax books or in the notice of sale" was cured. *Id.* at 139.[11] Then, quoting § 9958b of the original Jones–Munger Act of 1933 (now

---

11. Cases decided both before and after *Childress* also make it clear that this is the rule in Missouri. *See, e.g., Lowe v. Ekey,* 82 Mo. 286, 291 (1884) (internal quotation marks omitted) ("[I]f there was no sufficient description of the land in the anterior proceedings, assuredly a good description in the tax deed could not retroact upon a prior bad description of the land and validate it."); *Acton Enters., Inc. v. Stottle,* 646 S.W.2d 149, 151–52 (Mo.App. S.D.1983) (affirming trial court's judgment setting aside a collector's deed issued to the successful bidder after a tax sale on the ground that that property description contained in the collector's notice of sale was too vague in that it "could have described any land within the S 1/2 of the S 1/2 of Section 30, Township 22, Range 20," even though the collector's deed itself contained a proper description of the subject real estate). Thus even if the tax deed issued to Johnson contained a valid description of the land conveyed (which, as noted above, we do not decide), it would not cure any deficiency in the notice of sale.

codified as § 140.530, RSMo 2000), which then, as now, provided "that 'no sale or conveyance of land for taxes shall be valid ... if the description is so imperfect as to fail to describe the land or lot with reasonable certainty,'" the Court held that "a valid judgment for taxes could not have been obtained on the description here concerned, and if a valid judgment for taxes could not have been obtained, then certainly no one ... could have interfered with defendant's removal of his house on the ground that such would jeopardize the collection of taxes against the tract upon which the house stood." *Id.*[12]

Similarly, in *Ijames v. Geiler,* 783 S.W.2d 934 (Mo.App. E.D.1989), the notices of sale published by the collector, the collector's deed, and an unrecorded trustee's deed all made reference to "Pt. Lot 21 .80 Acres, Survey # 2991 School Dist. C–6 Road Dist # 13." *Id.* at 937. The trial court entered a judgment setting aside the deeds and quieting title in the plaintiff, concluding that "the description in the notices of sale, the collector's deed and the trustee's deed did not describe plaintiff's property with reasonable certainty since they did not state which portion of Lot 21 of Survey 2991 was involved." *Id.* at 936. The Eastern District affirmed, explaining:

> The trial court found, and we agree, that this description fails to establish with reasonable certainty what portion of Lot 21 is conveyed. The legal description describes, at most, .80 acres of a 32 acre lot, without reference to which .80 acres are to be conveyed. Such a description fails to describe plaintiff's land with rea-

sonable certainty and is, therefore, invalid under § 140.530.

*Id.* at 937.[13]

And so it is here. As in *Childress* and *Ijames,* the collector's published notice of sale does not describe the land which was to be sold with reasonable certainty because even though it refers to two 40–acre quarter-quarter sections, it fails to locate the tracts within them other than to say that they were somewhere in the northeast and north "PT"s thereof, respectively. As the trial court aptly put it, "if you could find the tracts of land in question, what 'parts' were being sold?"

Johnson cites three Missouri cases in support of his claim that the property descriptions contained in the collector's published notice of sale are adequate: *Simmons v. Affolter,* 254 Mo. 163, 162 S.W. 168 (1914), *Elsberry Drainage District v. Seerley,* 329 Mo. 1237, 49 S.W.2d 162 (1932), and *Schwartz v. Dey,* 780 S.W.2d 42 (Mo. banc 1989). All are readily distinguishable. In *Simmons,* the collector brought suit against the record owner of the property in question for back taxes, ultimately resulting in a judgment foreclosing the state's tax lien. 162 S.W. at 168. The judgment was executed and levied shortly thereafter, when the county sheriff sold the real estate at auction and issued a tax deed to the successful purchaser. *Id.* On appeal, the Court held that the judgment of foreclosure, which described the Phelps County land in question as "No. of acres 80, S. 2 S.W. 4, section 21, Twp. 36, range 7," was not void for uncertainty as it properly described the real

**12.** An unrelated part of the Court's holding in *Childress* was subsequently overruled in *Kuyper v. Stone County Comm'n,* 838 S.W.2d 436, 437 (Mo. banc 1992).

**13.** Although the plaintiff in *Ijames* also presented testimony to the effect that the descrip-

tion was too indefinite, we think the Eastern District's opinion makes it plain that the case did not turn on that testimony, but instead on the patent inadequacy of the property description in the notices of sale, the collector's deed and the trustee's deed.

estate comprising the south half of the southwest quarter of section 21, township 36, range 7. *Id.* at 169. *Elsberry* was an appeal from a judgment imposing a tax lien for delinquent drainage taxes on four tracts of property, in which the defendant argued that the descriptions of the tracts set forth in the tax bill were insufficient to support the judgment. 49 S.W.2d at 163. On appeal, the defendant conceded that the description of the first of these four tracts contained in both the plaintiff's petition and the judgment itself correctly identified his property. *Id.* at 165. That description was as follows: "That part of the Northeast quarter of the Southwest quarter of Section 21, Township 52, Range 2 East, lying East and North of ditch right of way, being part of tract No. 10, Denny's subdivision, containing 19.99 acres." *Id.* at 164. The Court held that the description of the first tract contained in the tax bill (19.99 acres "NESW that Pt. Lying E & N of ditch R of W. being pt. Tract No. 10 D's SubD" in Sec. 21, Twp. 52, R. 2E), *id.* at 165, correctly identified that part of the northeast quarter of the southwest quarter of the designated section lying east and north of a ditch right of way, and was sufficiently definite to support the judgment imposing the lien. *Id.* at 166.

However, in neither *Simmons* nor *Elsberry* (which were both decided prior to the enactment of the Jones–Munger Act) was the adequacy of a collector's published notice of tax sale at issue. Moreover, in both of those cases, unlike the one at bar, there was clearly no material variance between the property descriptions in the record owner's deed and the express terms of the judgments that were appealed; no highly irregularly-shaped fractional quarter-quarter sections were involved; and the descriptions there left nothing to pure speculation or conjecture. Meanwhile, *Schwartz* has absolutely nothing to do with this case, since, as pointed out in the

Court's opinion: "Plaintiffs do not argue in this appeal that the collector, in attempting to notify them of the tax sale, failed to comply with state statute. Instead, they contend the notice provided by the collector violated the Due Process Clause of the Fourteenth Amendment." 780 S.W.2d at 44.

Johnson further argues that despite the deficiencies noted *supra*, the notice of sale published by the collector in this case is nevertheless sufficient in that it contains enough additional descriptive information for one reasonably skilled in such matters to locate the land. *See Beldner*, 451 S.W.2d at 78; *Nat'l Cemetery Ass'n of Mo. v. Benson*, 344 Mo. 784, 129 S.W.2d 842, 845 (1939). First, he points out that, as required by § 140.150.2 and Art. 10, § 13, the notice of sale contained the name of the delinquent record owner, Scott W. Gibson, who had originally conveyed the property to Stadium West in December 1995. But as noted *supra*, that is merely a necessary (but not sufficient) statutory condition for a valid notice of sale. Second, he asserts that the notice of sale correctly recited the fact that the "property consisted of 27 acres, the precise amount deeded to [Stadium West] by Scott W. Gibson." However, the trial court correctly ruled that the 27–acre figure was not a valid point of reference because it was contradicted by the terms of Stadium West's unrecorded general warranty deed, which contained *no* acreage figures for either of the parcels conveyed by Gibson. We further note that the redemption notices sent by Johnson recited that the first parcel was a "14.95–acres tract" and the second parcel was a "10.15–acre tract." This adds up to 25.10 acres, not the 27.00 acres stated in the collector's published notice of tax sale and in the tax deed itself. It therefore appears that Johnson *himself* was uncertain as to the total acreage of the prop-

erties he had purchased at the tax sale, which is all the more reason to reject his argument. Third, Johnson argues that the notice of sale correctly recited, using both statutorily authorized and unauthorized (although decipherable) abbreviations, that the subject properties were located within the Southeast Quarter of the Northwest Quarter and the Southwest Quarter of the Northeast Quarter of Section 24, Township 45, Range 12. While this is true, the cases discussed *supra* clearly hold that even when abbreviations authorized by § 140.180 are used, partial descriptions such as this are simply not specific enough to describe the real estate to be sold with reasonable certainty. *See also O'Day v. McDaniel,* 181 Mo. 529, 80 S.W. 895, 896 (1904) (holding that while the use of abbreviations is authorized by what is now § 140.180, there is nothing in the law "permitting anything less than an accurate or correct description of the real estate"). Fourth, Johnson claims that since the notice of sale began with "US 63," it showed that the subject real estate "was along the U.S. Highway 63 corridor." While that is certainly one way to interpret the notice of sale, the fact remains that as published by the collector, it does not allow the reader to determine whether both or just one (and if just one, which one) of the parcels to be sold had some connection to U.S. Highway 63, and what that connection was. Fifth, Johnson argues that by using the "inverted grantee-grantor index" at the Boone County Recorder of Deeds office, and "armed with the four pieces of information outlined above, a reasonably experienced researcher at the Recorder's office could have found the subject deed to the 27 acres in five minutes in the undersigned's opinion." This opinion is completely unsubstantiated in the record.

Finally, in his reply brief, Johnson claims that if the collector's published notice of sale in this case is held to be invalid, "it would appear to call into question a great many tax sales." Whether or not this claim is true, the fact remains that for the reasons stated in our discussion of Johnson's first point relied on, "[t]ax sales have always been carefully scrutinized by this court." *Bussen Realty Co. v. Benson,* 349 Mo. 58, 159 S.W.2d 813, 814 (1942) (overruled on other grounds by *Powell v. County of St. Louis,* 559 S.W.2d 189, 196 (Mo. banc 1977)). Indeed, such arguments have long properly been rejected on appeal in similar cases. *See, e.g., State ex rel. Ward v. Linney,* 192 Mo. 49, 90 S.W. 844, 844 (1905). Ultimately, we echo our Supreme Court's conclusion in *Costello:* "In this case the Collector did not observe the statutes. And in such cases equity will afford relief." 262 S.W.2d at 596. Point denied.

### Conclusion

We hold that the record contains substantial evidence supporting the trial court's ruling that the notice of sale of the real estate in question did not describe the lands which were to be sold with reasonable certainty as required by § 140.530. This ruling was not against the weight of the evidence, and the trial court did not erroneously declare or apply the law in making it. Therefore, the August 24, 1998, tax sale at which Johnson purchased his interest in the subject real estate was conducted illegally as to those parcels, and the collector's deed under which he claims title is void and of no legal effect. Defendant-appellant Johnson thus has no right, title, or interest in the disputed lands, and plaintiff-respondent Stadium West Properties, L.L.C. is the sole owner of the surface estates thereof. Accordingly, the trial court's judgment is affirmed.

All concur.