C. Kay DOLAN, Respondent,

and

Monica Penrose, Plaintiff,

v.

Gilbert POWERS, Defendant,

and

Teresa A. Collins, Appellant,

and

Lynn Stoppy Brackin, Defendant.

No. WD 68098.

Missouri Court of Appeals,
Western District.

Jan. 29, 2008.

Jean Paul Bradshaw II, Alok Ahuja, Kansas City, KS, for Appellant.

Patrick Andrew McInerney, Kansas City, KS, for Respondent.

RONALD R. HOLLIGER, Judge.

In this election contest case we are asked to determine whether the trial court properly ruled with regard to counting certain contested ballots in an extremely close local race for county auditor of Johnson County. The results of the recount changed the initially announced result of the election. Teresa A. Collins now appeals the trial court's judgment declaring C. Kay Dolan to have been the actual winner of the race after the recount that was required by law because of the closeness of the vote. Collins argues six points on appeal, three of which are dispositive. She challenges the inclusion in the final tally of certain ballots falling into two separate classes. The first are what we will call party identification ballots. The second is a group of ballots that did not contain the initials of election place polling judges. We find that the ballots containing marks in or around the candidates' party affiliations were properly counted, as they constituted a distinguishing mark adjacent to the candidate name. However, we believe that the trial court was without sufficient evidence to decide whether the absence of the statutorily mandated judge's initials was due to mistake and, therefore, remand on this point. Therefore, the judgment is affirmed in part and reversed in part.

## Statement of Facts

The general election for Johnson County, Missouri, Auditor was held on November 7, 2006, and Teresa A. Collins was declared the winner by a margin of four votes. Her opponent, C. Kay Dolan, filed this suit challenging the election results pursuant to section 115.601.1.[1] After a hearing on January 3, the court ordered that a hand recount be conducted of all ballots cast using optical scanning equipment,[2] and thereafter issued a Writ of Recount pursuant to Section 115.585[3] and Section 115.587[4] setting out the specifics of how the recount would be conducted.

1. All statutory citations are to RSMo 2000 unless otherwise stated. Section 115.601.1 states that "[a]ny contestant in a primary or other election contest who was defeated by less than one percent of the votes cast for the office ... shall have the right to a recount of the votes cast for the office."

2. The court did not deem a hand recount necessary for the touch screen ballots.

3. "Whenever a recount is ordered pursuant to section ... 115.601, the court ... trying the contest shall issue a writ to each election authority responsible for conducting the election in any area in which an alleged irregularity occurred, commanding the election authority to prepare its office and all records and material relating to the contested election for the recount." Section 115.585.1.

4. "Whenever a recount is ordered pursuant to section ... 115.601, the court ... shall determine the number of persons necessary to assist with the recount and shall appoint such persons equally from lists submitted to the court ... by the contestant and the contestee.... Each recount shall be completed under the supervision of the court ... and the persons appointed to assist with the recount shall perform such duties as the court ... shall direct. Upon completion of any duties prescribed by the court ... the persons appointed to assist with the recount shall make a written and signed report of their findings to the court...." Section 115.587. "These findings shall be prima facie evidence of the facts stated therein, but any person present at the examination of the votes may be heard as a witness to contradict the findings." *Id.*

The day after the conclusion of the recount, Gilbert Powers, the Johnson County, Missouri, County Clerk, submitted his Report of Findings to the court. The report concluded that Dolan, not Collins as originally announced, had won the race by a three-vote margin. The report also identified twenty-one challenged ballots, of which, three ballots were challenged by the statutory recount "team," a "team member" challenged eleven ballots, and an "observer" challenged seven ballots. Of the twenty-one challenged ballots, Respondent Powers counted eighteen ballots in reaching the recount result: fourteen for Dolan and four for Collins. After a hearing on the challenged ballots, the court found that Dolan won the election by two votes, concluding that the recount team should not have counted one of the ballots.

On February 27, the court entered its amended order/judgment, which memorialized its rulings on the challenged ballots and declared Dolan the winner of the Auditor's race. It also ordered Collins to give up the office of County Auditor.

Collins argues six points on appeal. In points I, II and IV she attacks the court's counting of Ballot numbers 22, 23, 25, 26, 29, and 30 on the grounds, variously, that the court misapplied the law, failed to apply the law, or that the judgment violated the statewide, uniform counting standards required by the equal protection clause. These are the so-called party affiliation ballots. In point III, she makes an additional attack on the counting of ballot number 22, asserting that it should have been held to be an invalid overvote. Alternatively, she argues that if the standard applied to number 22 was correct, the court should have also counted ballot number 11. Three points are dispositive and, therefore, will be addressed below.

In her first point on appeal, Collins argues that ballots containing a circle around the candidate's party affiliation should not have been counted because those ballots did not contain a mark in the "target area" of the ballot. In her fifth point, Collins argues that the court erred in counting eleven ballots as valid votes because those ballots contained no authenticating initials of the election judges as required by statute.[5] In her sixth point, Collins argues that the trial court erred in not permitting her to conduct discovery concerning the challenged ballots that did not contain the initials of the election judges.

### Missouri Secretary of State's Uniform Counting Standards

The parties agree that the Missouri Secretary of State's Uniform Counting Standards for Optical Scan Ballots (UCS), published at 15 CSR 30–9.020, as well as Chapter 115 of the Missouri Revised Statutes, direct the outcome of the case.

The national drive to develop specific, uniform, statewide standards for counting mismarked ballots in close elections began with the Supreme Court's decision in *Bush v. Gore*, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000), and the Florida election recount which spawned that decision. *Bush* vacated a Florida Supreme Court decision, which had ordered a partial recount of punch-card ballots in the 2000 presidential election. The Florida Supreme Court had ordered recount teams to determine whether additional "legal votes" existed among the ballots that tabulating machines had not counted; a "legal vote" was defined as "one in which there is a 'clear indication of the intent of the voter.'" *Id.* at 102, 121 S.Ct. 525. The Supreme Court held that conducting a recount under this amorphous standard

---

**5.** *See* section 115.457.

would deny voters equal protection of the laws. *Id.* at 103, 121 S.Ct. 525. The Court held that equal protection guarantees applied not only to the right to vote, but also to the manner in which the franchise is exercised. *Id.* at 104–05, 121 S.Ct. 525. Therefore, equal protection demands that ballots be considered according to specific, uniform, statewide standards, beyond vague directives to determine "the intent of the voter." *Id.* at 105–06, 121 S.Ct. 525.

In the aftermath of the 2000 election and *Bush,* the United States Congress enacted the "Help America Vote Act" (HAVA), which contains detailed extensive provisions designed to upgrade and modernize voting equipment and election processes throughout the country. HAVA required that "[e]ach State" adopt "uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the State." 42 U.S.C. § 15481(a)(6). Missouri Secretary of State Robin Carnahan responded to this HAVA command by reviewing and substantially revising Missouri's UCS. The UCS are tailored to each type of voting system used within the State, and are accompanied by illustrations intended to provide further specific guidance to persons called upon to determine the legality of individual ballots.

*Party Affiliation Ballots*

■ Despite the instruction at the top of the ballot stating that "To vote, darken the oval(s) completely next to your choice(s), like this: [example]"[6] six voters made marks in, over, or around the candidate's party affiliation to the right of the

candidate's name on the ballot, rather than in the oval to the left of the candidate's name. The recount team counted all six party affiliation ballots in Dolan's favor. The court counted all but one in Dolan's favor.[7] On appeal, Collins argues that none of these ballots should have been counted because they did not contain a mark in the "target area" of the ballot nor did they have a circle around the name of the voter's preferred candidate. She argues that these are the only two options that the UCS provides and that when promulgating the UCS, the Secretary of State expressly considered and rejected counting ballots with marks placed over the candidate's party name. As support for that position, she points to the fact that the proposed rule contained such an inclusion, which was ultimately not incorporated into the UCS.

■ The parties disagree as to the standard of review with regard to the trial court's determination of whether these ballots were marked in the "target area." Collins argues that it is a question of application of the law, which we review *de novo. See Dudley v. Agniel,* 207 S.W.3d 617, 618 (Mo. banc 2006). Dolan argues that it is a question of fact, which we review under the standard of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). Dolan argues that there is no definition of target area in the UCS and, therefore, it was a factual question as to what the target area was. We disagree. To hold that the question was merely one of fact would undermine the statutory and constitutional requirement of a uniform statewide counting standard. Nevertheless, we likewise do not accept Collins' argument that the statutes

---

6. An appendix to this opinion includes one of the contested "party affiliation ballots" for illustration.

7. The court did not count one ballot on which only the "D" in "DEM" was colored in because it could not "ascertain what the person intended."

and regulations define a proper ballot as being only one that has a mark in the oval. The oval is the "target area" as Collins contends. *See* 15 CSR 30–9.020(3)(A). However, the regulation does not limit the definition of a proper mark to one that is in the oval. In full, the regulation establishes:

> The following marks shall be considered expressions of voter intent: (A) Any ballot which is properly marked in the target area as specified by the ballot instructions. (B) [not relevant here]. (C) The target area next to a candidate or issue preference is circled. (D) There is a distinguishing mark in the target area next to a candidate or issue preference issue, including but not limited to the following examples: [exemplar ballots and marks set out in the regulation]. (E) The name of a candidate or issue preference is circled. (F) [not relevant here].

15 CSR 30–9.020(3). In essence, Collins contends that if a ballot is not marked as shown in one of the examples illustrated in the regulation, it cannot be considered indicative of voter intent. We disagree with her conclusion and do not believe that either the Missouri General Assembly or the UCS intended that result.

Dolan argues that the examples set out in subsection (D) are by their own terms not exclusive. Although correct, we do not agree with Dolan that this subsection creates a different definition of target area. We believe that Collins correctly argues that subsection (D) only applies to various methods of marking (other than filling in) the target area, which in the case in question is the oval. That agreement with Collins' argument does not mean, however, that the trial court erred.

We must also be guided by the instructions given by the legislature in Chapter 115 of the Missouri Revised Statutes at the same time that it directed the Secretary of State to develop the regulations being discussed. Under the section titled "Counting of Votes" the election authority is given specific standards of how to count votes depending on which type of system is used to cast the ballot. For counting ballots cast using optical scan voting systems (the system in question here), it is directed that:

> "In jurisdictions using centrally based tabulators, if a ballot is so rejected it shall be reviewed by a bipartisan team using the following criteria:
>
> . . .
>
> > (b) Voter intent shall be determined using the following criteria:
> >
> > > a. There is a distinguishing mark in the printed oval or divided arrow adjacent to the name of the candidate or issue preference. [This provision is incorporated and explained in subsections (A) and (C) and (D) of the regulation as discussed above.]
> > >
> > > b. There is a distinguishing mark *adjacent to the name of the candidate* or issue preference": or
> > >
> > > c. The name of candidate or issue preference is circled. [This provision is incorporated and explained in subsection (E) of the regulation.]

Section 115.456.2(3)(b)b (2006 Cum.Supp.) (emphasis added).

There is no portion of the regulation that sets out or explains subsection b. of the statute. To accept Collins' argument would force us to conclude that subsection b. has no meaning because it is not incorporated into the UCS by the Secretary of State. We cannot assume the legislature intended a meaningless act. *Wollard v. City of Kansas City*, 831 S.W.2d 200, 203 (Mo. banc 1992). It is this provision of the statute that we will consider in determin-

ing whether the election judges and the trial court erred in applying it to the ballots in question.[8]

Here, the court counted five ballots (numbers 22, 23, 25, 26 and 30) in which marks were made in, over, or around the candidate's party affiliation to the far right-hand side of the ballot, rather than in the oval immediately to the left of the candidate's name. The definition of "adjacent" is "[l]ying near or close to; sometimes, contiguous; neighboring." BLACK'S LAW DICTIONARY 41 (6th ed.1990). A mark made in, over, or around the candidate's party affiliation, which is to the right of the party's name is sufficient to satisfy the "adjacent to" requirement of Section 115.456.2(3)(b)b. It is particularly noteworthy that the voters casting the ballots in question had consistently marked or circled each candidate's party affiliation, and had voted for candidates from differing parties. Nevertheless, Collins argues that the ballots were improperly counted because they violated the last clause of section 115.456.5 that "[n]otwithstanding any other provisions of law, a distinguishing mark indicating a general preference for or against candidates of one political party shall not be considered a vote for or against any specific candidate." We agree with Dolan that the use of the singular term "mark" along with the phrase "indicating a general preference" is a prohibition against strict party voting. The legislature's intent to prohibit voting by way of a "straight party ticket" is also evident from section 115.237, which prohibits the election authority from designing a ballot that allows "a person to vote a straight political party ticket." Section 115.237.4.

*Separate Challenge to Ballot Number 22*

■ Collins separately challenges ballot number 22 on an additional ground. She contends that it should not have been counted in favor of Dolan because it was an overvote. Alternatively, she argues that if it was properly counted then ballot number 11 in favor of Collins was improperly and inconsistently rejected as an overvote. An overvote occurs when a ballot is marked for more than one candidate in the same race. Overvotes are not to be counted. Section 115. 453(2). On ballot number 22, the oval next to Dolan's name was completely filled in while there was a small mark in the oval next to Collins' name. The court found that the mark in the oval next to Collins' name was so small that it appeared to be infinitesimal and a stray mark. Collins now argues that, under the statute and the regulation, both marks are distinguishing marks indicating a vote for both candidates. She argues again that, under regulations, no example is given permitting such an action. She also relies on the fact that, in her final regulation, the Secretary of State omitted a provision in the proposed rule that would have allowed hesitation or stray marks to be considered an expression of voter intent. The examples given in 15 CSR–30.9.020(F) are for situations where the voter has clearly and expressly made a distinguishing mark that would otherwise be sufficient to be counted as a vote for both parties in the race. She has turned this example on its head and contradictorily argues that a hesitation or stray mark on ballot 22 should be counted as a vote for her. This is the position rejected apparently by the Secretary in adopting the final regulations. Moreover, all of the examples set forth in the UCS

---

**8.** Collins also argues that the Secretary of State specifically rejected a proposed regulation that would allow for counting votes with a mark on the party affiliation next to the candidate's name. We need not answer that argument because we are bound by the statutes as well as the regulations in determining the question of voter intent.

deal with situations where a clear overvote has been cast and some other marking is used to determine which mark should be counted. Nor do we accept Collins' argument that consistency would also require counting ballot 11 in her favor under the standard applied by the court. Ballot number 11 contains an oval completely filled in for Collins. The oval next to Dolan's name contains a mark that fills nearly 25% of the oval and extends beyond its boundary. It is not a stray or hesitation mark and would clearly be sufficient to constitute a "distinguishing mark" for a candidate. It was clearly an overvote under the statutory standard. Ballot number 22 was not.

In conclusion, we find that the trial court correctly counted ballots 22, 23, 25, 26, and 30 for candidate Dolan. Its ruling and judgment comport with the statutes, UCS, and the requirements of equal protection. The court did not apply personal and subjective tests in determining voter intent. Points I, II, III, and IV are denied.

Because the counting of these ballots does not definitively determine the results of the election from the recounts, we must consider the challenges to the other class of ballots.

### Non-initialed Ballots

During the recount, Respondent Powers and the recount team counted eleven ballots that were not initialed by the election judges as required by statute. These ballots were marked seven to four in favor of Dolan. Section 115.457 provides that "[i]f a ballot appears without the initials of two election judges, the ballot shall be reject-ed, except when it appears the absence of initials is due to mistake of the election judges and that the ballot is otherwise legal and proper." The court held that the unauthenticated ballots should be counted in the absence of evidence of "some sort of obvious irregularity." Collins argued that she should have been permitted to conduct "very limited discovery" into the circumstances surrounding the absence of the required election judges' initials. The court denied this request.

A quick outline of the voting procedures will assist us in our analysis. A voter entering a polling place first signs the precinct register, and two election judges of opposing political parties identify the voter and initial the register. Section 115.431 (2006 Cum.Supp.). "All voter's names on the precinct register [are] numbered consecutively in the order in which they have signed ..." Section 115.431 (2006 Cum.Supp.). After the voter's identity has been certified, "two judges of different political parties, or one judge from a major political party and one judge with no political affiliation, shall ... initial the voter's ballot or ballot card." Section 115.433 (2006 Cum.Supp.). Once these requirements have been satisfied, "the election judges shall allow the voter to proceed to the voting booth and vote." Section 115.435.

Immediately after the polls close "in each polling place using an electronic voting system, the election judges shall secure the marking devices against further voting" [9] and "remove the ballot cards from the ballot box and separate the ballots with write-in votes from those without write-in votes." [10] Section 115.467.1 & .2.

---

**9.** A "marking device" is defined as "either an apparatus in which ballots are inserted and voted by use of a punch apparatus, or any approved device that will enable the votes to be counted by automatic tabulating equip-ment." Section 115.013(14) (2006 Cum. Supp.).

**10.** The election judges count the write-in votes first. Section 115.467.1.

"All ballot cards shall be counted in order by polling place." Section 115.477.2. A return shall be produced by the automatic tabulating equipment [11] "showing the total number of votes cast for each candidate . . . at each polling place and in the jurisdiction as a whole." Section 115.477.2.

The election judges must "[c]ertify in the tally book: the number of ballots cast by reconciling the ballot stubs against the number of identification certificates signed; the number of defective and spoiled ballots; the number of ballots with write-in votes; and the number of ballots received at the polling place which were not cast at the election." Section 115.471(1). Importantly, "[i]f the number of signed identification certificates is not the same as the number of ballots cast, the judges shall make a signed statement of the fact and the reasons therefor, if known, and shall return the statement with the statement of returns." *Id.* "The final and correct return printed by the automatic tabulating equipment added to the write-in, absentee and hand counted votes shall be the official return of each polling place and jurisdiction." Section 115.481. "As soon as practicable after each election, the election authority shall convene a verification board to verify the count and certify the results of the election." Section 115.497. "[T]he verification board shall meet and check the addition and figures on all tally sheets and statement of returns and shall compare its records with the returns made by the election judges and the election authority the day of the election." Section 115.501. The verification board must then "issue a statement announcing the results of each election held within its jurisdiction and shall

certify the returns to each political subdivision and special district submitting a candidate . . . at the election." Section 115.507.1 (2006 Cum.Supp.).

Section 115.457 instructs the counting judges not to count ballots in which no judge's initials appear, *"except when it appears the absence of initials is due to mistake of the election judges and that the ballot is otherwise legal and proper."* Here, the counting judges (actually the recount team) counted the ballots; therefore, they must have decided that the exception applied.

Collins argues that Dolan, as the proponent of the non-initialed ballots, has the burden of proof to show that the absence of the initials on the eleven ballots was due to mistake of the polling judges. We disagree. Collins has failed to consider the procedural posture before the trial court after the recount was concluded. Dolan was entitled to a recount of the ballots for the auditor race under section 115.601 because of the closeness of the vote. No proof of irregularity was required. Such a recount was ordered pursuant to sections 115.585–115.601. Collins does not raise any issue about the propriety of ordering a recount or the procedure that was utilized. Under section 115.587, the court appointed a recount team of equal members from lists submitted by Collins and Dolan. Attorneys for each candidate were allowed to be present. It was the responsibility of the recount team to consider all of the ballots in question,[12] to determine whether they should or should not be counted and to make its report through Powers to the court of its findings. Each member of the team and the attorneys for the candidates

---

**11.** "Automatic tabulating equipment" is defined as "the apparatus necessary to examine and automatically count votes, and the data processing machines which are used for

counting votes and tabulating results." Section 115.013(1) (2006 Cum.Supp.).

**12.** Because a hand recount was ordered, this would be all of the ballots cast in the race.

were allowed to object to the determination by the recount team of whether or not a ballot should be counted. The recount team determined that each of the uninitialed ballots should be counted. Either Collins' attorney or one of the team members she proposed challenged those determinations at the time of the recount. Collins raises no issue that the ballots are improper for any reason other than the lack of initials.

■ According to Section 115.587, the findings of the recount team are to be considered "prima facie evidence of the facts stated therein." "Prima facie" as an adjective is defined as "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted <a prima facie showing>." BLACK'S LAW DICTIONARY 1228 (8th ed.1999). "Prima facie evidence" is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." *See also Hobbs v. Dir. of Revenue*, 109 S.W.3d 220, 222 (Mo.App. E.D.2003). That the recount team decided to count the uninitialed ballots is prima facie evidence of the fact (required by section 115.587) that the lack of initials was the result of mistake. It was, therefore, sufficient to show a prima facie case for the inclusion of those ballots. A "prima facie case" is defined as "[a] party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor." *Id.* at 222 n. 3. This principle has been utilized in a similar manner in other situations where the legislature has used the term "prima facie evidence." *See, e.g., Stadium W. Props., L.L.C. v. Johnson*, 133 S.W.3d 128 (Mo.App. W.D.2004) (applying section 140.460.1 to the recording of a tax deed as prima facie evidence of the regularity of the sale). We conclude, therefore, that the party challenging the counting of the uninitialed ballots by the recount team has

the burden of proof. In this case the burden would be on Collins to show that the recount team erred in counting the ballots because the absence of initials was not the result of a mistake.

■ Collins requested discovery on this issue, which the court denied. Instead, the court issued its judgment based on the face of the ballot. We believe that the trial court erred in this respect and that Collins should have been allowed to conduct discovery on this issue.

The most obvious purpose of the initials requirement is to prevent voting fraud perpetrated in one of two ways: casting a ballot without being properly signed-in by the polling judges, or casting more than one ballot. The statutes require the polling place judges to compare the number of signed-in voters with the number of ballots cast to detect such possible fraud. *See* section 115.471. That report is to be reviewed by the election authority and was available to the recount team. That would seem to be the first avenue for Collins to seek discovery. There may be other evidence also relevant to the issue. We reject that the trial judge's personal review of the ballots was conclusive as to the issue. Rather, it was first the recount judges who had to determine whether the absence of initials on the ballots was a mistake. Thus, the fact that they counted those ballots was prima facie evidence of mistake. The challenging party, in this case Collins, has the burden to show that the recount judges erred and should have been allowed to conduct discovery on this issue.

For the reasons stated, the determination of the trial court to count the so-called party identification ballots is affirmed and the rest of the matter reversed and remanded for discovery by Collins on the limited issue of the non-initialed ballots

and an evidentiary hearing by the judge on that issue in accordance with the principles enunciated in this opinion.

PATRICIA A. BRECKENRIDGE, Presiding Judge,[13] and PAUL M. SPINDEN, Judge, concur.

13. After this case was submitted for this court's decision, Judge Breckenridge was appointed to the Supreme Court of Missouri.

By special assignment, she has continued to serve as a member of this court's panel in this case.

20

# OFFICIAL BALLOT
## GENERAL ELECTION - NOVEMBER 7, 2006
### JOHNSON COUNTY, MISSOURI

REPUBLICAN PARTY (REP)   DEMOCRATIC PARTY (DEM)   LIBERTARIAN PARTY (LIB)   PROGRESSIVE PARTY (PRG)

## INSTRUCTIONS TO VOTERS

**To vote, darken in the oval(s) completely next to your choice(s), like this:** ◼

Write-In: To vote for a valid write-in candidate, you must fill in the oval completely and write in the name of the candidate on the blank write-in line.

If you tear, deface, or make a mistake and wrongly mark any ballot, you must return it to the election judges and receive a new ballot.

**FOR U.S. SENATOR**
Vote for ONE

JIM TALENT — REP
CLAIRE MCCASKILL — DEM
FRANK GILMOUR — LIB
LYDIA LEWIS — PRG

**FOR STATE AUDITOR**
Vote for ONE

SANDRA THOMAS — REP
SUSAN MONTEE — DEM
CHARLES W. BAUM — LIB
TERRY BUNKER — PRG

**FOR U.S. REPRESENTATIVE 4TH DISTRICT**
Vote for ONE

JAMES A. (JIM) NOLAND — REP
IKE SKELTON — DEM
BRYCE A. HOLTHOUSE — LIB
MELINDA (MEL) IVEY — PRG

**FOR STATE REPRESENTATIVE 122ND DISTRICT**
Vote for ONE

MIKE MCGHEE — REP
KATHY J. HUDSON — DEM

**FOR CIRCUIT JUDGE CIRCUIT 17, DIVISION 1**
Vote for ONE

JACQUELINE COOK — DEM

**FOR ASSOCIATE CIRCUIT JUDGE ASSOCIATE DIVISION**
Vote for ONE

KARL TIMMERMAN — REP
SUE DODSON — DEM

**FOR ASSOCIATE CIRCUIT JUDGE PROBATE DIVISION**
Vote for ONE

GARRETT R. (ROBIN) CROUCH II — REP

**FOR PRESIDING COMMISSIONER OF THE COUNTY COMMISSION**
Vote for ONE

WILLIAM R. "BILL" BRENNER — REP
JOHN A. HART — DEM

**FOR CLERK OF THE CIRCUIT COURT**
Vote for ONE

STEPHAN E ELKINS — DEM

**FOR COUNTY CLERK**
Vote for ONE

GILBERT POWERS — REP

**FOR RECORDER OF DEEDS**
Vote for ONE

JAN JONES — REP

**FOR PROSECUTING ATTORNEY**
Vote for ONE

LYNN STOPPY BRACKIN — REP
MONICA PENROSE — DEM

**FOR COUNTY AUDITOR**
Vote for ONE

TERESA A. COLLINS — REP
C. KAY DOLAN — DEM

**FOR COLLECTOR OF REVENUE**
Vote for ONE

RUTHANE SMALL — DEM

## TURN OVER TO CONTINUE VOTING