**42**

Marcel SCHWARTZ and Ruth A. Schwartz, Plaintiffs–Appellants,

v.

Alberta L. DEY, Marion W. Dey, and Raymond W. Easley, Collector of Boone County, Missouri, Defendants–Respondents.

No. 71356.

Supreme Court of Missouri,
En Banc.

Nov. 14, 1989.

Rehearing Denied Dec. 12, 1989.

Larry M. Woods, Columbia, for plaintiffs-appellants.

Jeffrey O. Parshall, Thomas M. Schneider, Columbia, for Raymond Easley.

JAMES R. REINHARD, Special Judge.

Plaintiffs appeal from the trial court's judgment refusing to set aside a tax collector's deed. We affirm.

The principal issue in this case is whether plaintiffs received constitutionally sufficient notice of a real estate tax sale. When this case was before us previously, *Schwartz v. Dey*, 665 S.W.2d 933 (Mo.banc 1984), we ruled that the trial court erred in summarily dismissing plaintiffs' petition without considering evidence of the means available to the collector for apprising plaintiffs of the pendency of the sale. Upon remand, the trial court heard evidence, concluded the notice given plaintiffs was reasonable under the circumstances, and rendered judgment for respondents.

In 1978, plaintiffs, residents of Maryland, purchased real estate in Boone County, Missouri. The deed to the property indicates plaintiffs' mailing address as 320 West Boulevard North, Columbia, Missouri. This is the address of the property described in the deed. Plaintiffs' daughter occupied the premises for a period of slightly more than one year during 1978 and 1979. The property was leased during the ensuing two years to two separate sets of tenants, and plaintiffs then offered it for sale through a Boone County real estate agency commencing June 22, 1981. On August 23, 1982, the property was sold at the tax sale to respondents, the Deys.

When plaintiffs closed on the property, the 1978 real estate taxes were prorated so that plaintiffs received a credit against the sale price for that part of the taxes accruing up to May 5, 1978, the date of closing.

Prior to closing, the attorney who represented plaintiffs in the purchase of the property prepared and mailed them a title opinion which stated, "The abstract shows city, state, and county taxes on said real estate for 1977, and all prior years have been fully paid. *The said taxes for 1978 now constitute a lien.*" (Emphasis ours.) Marcel Schwartz attended the closing and signed a closing statement which contains the following provision: "Total annual estimated taxes $455.65 [Sellers] have given you a credit for 125 days taxes in the amount of $156.04. You are therefore to pay your own taxes for this year when payable." After closing, plaintiffs' attorney mailed them a title insurance policy along with a copy of the recorded deed containing the incorrect mailing address. In his cover letter, the attorney wrote, "[I]n my opinion you hold fee simple title to this property free of all liens and encumbrances except taxes for 1978, which were prorated as of the date of closing." The attorney apparently had no further contact with plaintiffs until he was called as a witness in the trial below.

Plaintiffs' 1978 and 1979 tax bills were mailed by the collector in November of each year. All correspondence mailed by the collector to plaintiffs was addressed to 320 West Boulevard North, etc. This was the address obtained by the county assessor from the office of the recorder of deeds; the assessor in turn provided this address to the collector. In 1979, the collector mailed plaintiffs a delinquency notice warning of a possible tax sale in 1980 if the 1978 taxes were not paid. The parties have stipulated that the 1978 and 1979 tax bills were not returned by the post office. Additionally, there is evidence in the record supporting the conclusion that the 1979 delinquency notice was unreturned. The next eight notices, consisting of either tax bills or delinquency notices, were returned by the post office marked "not deliverable as addressed; unable to forward." At least some mail addressed to plaintiffs was forwarded to them by the occupants of the Columbia residence. In compliance with § 140.170, RSMo 1986, the collector also published notices of tax sale in a local newspaper.

Plaintiffs operate a travel agency in Washington, D.C. They own real estate in Maryland and have paid property tax on it annually since at least 1978. A certified public accountant employed by them prepares their state and federal income tax returns. Since their daughter vacated the premises in 1979, the other tenants mailed their rent checks to plaintiffs who, in turn, forwarded the money to their daughter. Plaintiffs did not report the rental income from the Columbia property to their accountant because they considered the property to belong to their daughter, although it was plaintiffs who paid the insurance and maintenance. They knew the Columbia residence would be subject to property tax and were aware specifically of their obligation to pay the prorated 1978 taxes. However, they never inquired of the collector as to their tax obligation, nor did they provide him with their Maryland address.

Between 1978 and 1982, the collector mailed approximately 70,000 real and personal property tax bills; 3,000 to 4,000 of these were returned as undeliverable. A second mailing cut in half the number of undeliverable bills. The collector's staff attempted to reduce this number further by checking the local phone directory, the university directory, the city directory and the state Blue Book. Of the 264 pieces of property sold by the collector in 1982, approximately 130 were the products of returned notices. The collector characterized his staff of four permanent employees as "[v]ery, very busy."

The trial court made detailed findings of fact and conclusions of law. In particular, the court found that plaintiffs received the 1978 and 1979 tax bills and at least one delinquency notice. The court concluded that, under the circumstances of this case, the collector was not required to take further steps to effectuate notice. Thus, the court entered judgment for respondents. We must affirm the trial court's judgment unless it is unsupported by substantial evidence, unless it is against the weight of the evidence, or unless it erroneously declares

or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976).

█ Plaintiffs do not argue in this appeal that the collector, in attempting to notify them of the tax sale, failed to comply with state statute. Instead, they contend the notice provided by the collector violated the Due Process Clause of the Fourteenth Amendment. Any inquiry into the constitutional sufficiency of notice begins with *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). When a property interest is at stake, according to *Mullane*, one who would affect that interest is under a duty to provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657. However, we have recognized that the duties imposed by due process on the tax collector must be considered in balance with the duty of a landowner to preserve his property. *Trapf v. Lohr*, 666 S.W.2d 414, 415 (Mo.banc 1984), *appeal dismissed*, 469 U.S. 1013, 105 S.Ct. 423, 83 L.Ed.2d 351 (1984). As the Court noted in *Mullane,*

> A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, ... or that he has left some caretaker under a duty to let him know that it is being jeopardized.... As phrased long ago by Chief Justice Marshall ..., "It is part of common prudence for all those who have any interest in [a thing], to guard that interest by persons who are in a situation to protect it."

*Mullane*, 339 U.S. at 316, 70 S.Ct. at 658 (citations omitted).

Most of the cases addressing the adequacy of notice involve distinctions between notice by publication and notice by mail. *See, e.g., Mullane; Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983); *Lohr v. Cobur Corp.*, 654 S.W.2d 883 (Mo.banc 1983). These cases generally stand for the proposition that when a publicly recorded property interest is at stake, notice by publication is insufficient to satisfy due process. At first blush, it would seem that the collector's actions here withstand constitutional scrutiny because the notice was by mail. However, notice by mail does not in all cases discharge the state's duty. When the state knows that notice by mail will be ineffective, more extensive forms of notice may be required. *See, e.g., Robinson v. Hanrahan*, 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972) (notice of forfeiture procedure mailed to an address known by the state to be inaccurate was defective); *Covey v. Town of Somers*, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) (mailed notice to a taxpayer known to be incompetent and incapable of understanding such notices was insufficient to afford her notice of a foreclosure sale).

In this case, plaintiffs do not contend that the collector knew their address of record was incorrect or that their correct address was information in the public domain. Instead, they submit scenarios under which the collector could have found their Maryland address. We have no doubt that under these scenarios it would have been possible to locate plaintiffs' whereabouts. The constitutional analysis requires, however, that we balance the interests of the parties and determine whether the collector's failure to make further attempts to notify plaintiffs was unreasonable. Plaintiffs argue, for instance, that the collector could have found their Maryland address by going to the recorder's office and examining the deed to the property. They concede that their mailing address as shown by the deed is incorrect, but suggest that, from the deed, the collector could have learned the identity of the person who served as notary and should have contacted this person in an attempt to discover plaintiffs' true whereabouts. In this case, the notary was the attorney who represented plaintiffs in the purchase of property. Plaintiffs also argue that the collector could have effected notice by locating and/or contacting their tenants. These scenarios place upon the collector a substantially greater duty than that envisioned by *Mullane* and *Mennonite* because

they require the collector to ascertain whether the owners' publicly recorded address is correct. The collector is not required to make "impracticable and extended searches ... in the name of due process." *Mullane*, 339 U.S. at 317, 318, 70 S.Ct. at 659. Nor is he "required to undertake extraordinary efforts to discover the ... whereabouts of [the owner]." *Mennonite*, 462 U.S. at 798 n. 4, 103 S.Ct. at 2711 n. 4.

Our inquiry does not end with the efforts by the collector to notify taxpayers. We are also concerned with the means available to plaintiffs to safeguard their property interest. *Mullane*, 339 U.S. at 316, 70 S.Ct. at 658. Plaintiffs in this case have paid real property taxes in Maryland. They know such taxes are payable in Missouri. They knew specifically that they were obligated to pay the taxes for the remainder of 1978. They have not, however, made any effort to contact the collector concerning their taxes.

Moreover, it is evident that the occupants of plaintiffs' Columbia residence forwarded at least some of plaintiffs' mail to them. Two tax bills and one delinquency notice were not returned by the post office. The collector was entitled to indulge the assumption that plaintiffs received the unreturned notices and were aware of the prospect of a tax sale.

We stated in *Trapf*, "At some point a property owner's presumptive duty to preserve his property outweighs the responsibility of a tax collector to provide more extensive forms of notice." *Trapf*, 666 S.W.2d at 415. Admittedly, the facts in *Trapf* are more compelling than those here. Nonetheless, the point has been reached in this case; hence we conclude the notice provided plaintiffs was constitutionally sufficient. Support for our conclusion can be found in decisions from other states. *See Girrbach v. Levine*, 132 A.D.2d 41, 522 N.Y.S.2d 276 (1987); *Holland v. King*, 500 N.E.2d 1229 (Ind.App.1986); *Congregation Yetev Lev D'Satmar, Inc. v. County of Sullivan*, 59 N.Y.2d 418, 452 N.E.2d 1207, 465 N.Y.S.2d 879 (1983). *See also City of Atlantic City v. Block C–11, Lot 11*, 74

N.J. 34, 376 A.2d 926 (1977), appeal dismissed, 434 U.S. 1055, 98 S.Ct. 1222, 55 L.Ed.2d 775 (1978); *Henderson County v. Osteen*, 292 N.C. 692, 235 S.E.2d 166 (1977). *But see Tracy v. County of Chester, Tax Claim Bureau*, 507 Pa. 288, 489 A.2d 1334 (1985).

■ In their other point, plaintiffs contend the buyers at the tax sale paid inadequate consideration. The property was sold at a third offering. Plaintiffs concede that under *Powell v. County of St. Louis*, 559 S.W.2d 189 (Mo.banc 1977), inadequacy of consideration is not a basis for setting aside this tax sale. They argue, however, that when the inadequate purchase price is coupled with defective notice, relief is available. Given our resolution of the notice issue, we need not discuss this point further.

Judgment affirmed.

BLACKMAR, C.J., and ROBERTSON, RENDLEN, HIGGINS, COVINGTON and BILLINGS, JJ., concur.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.