In the Matter of **FORECLOSURE OF LIENS FOR DELINQUENT LAND TAXES BY ACTION IN REM: Manager of The Division of Finance of Jackson County, Missouri, Respondent;**

**Maximilian Investments, LLC., Respondent,**

v.

**Parcels of Land Encumbered with Delinquent Tax Liens, Defendant,**

**Missouri Family Credit Union, Appellant.**

No. WD 65122.

Missouri Court of Appeals, Western District.

March 14, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 2, 2006.

Application for Transfer Denied May 30, 2006.

H. Kent Desselle, Independence, for Appellant.

Randell Gene Collins, County Counselor Office, Kansas City, Berry F. Laws III, Kansas City, for Respondent.

RONALD R. HOLLIGER, Judge.

Missouri Family Credit Union, formerly known as Northeast Credit Union (hereinafter "Credit Union"), appeals a judgment refusing to set aside a tax sale by Jackson County for a parcel of real estate upon which it held a lien by virtue of a first deed of trust. Under the deed of trust, tax bills were to be sent to the owner, not the lienholder. Credit Union argues that the sale should have been set aside by the trial court because of the inadequacy of the sale price, for violations of the procedures set forth in the Land Tax Collection Act, and for lack of notice to it of the planned tax sale. We find that the sale price was not grossly inadequate so as to shock our conscience and that the County gave or attempted to give such notice as required by statute and that such notice did not deny Credit Union of constitutional due process. The judgment is therefore affirmed.

### Facts

Northeast Credit Union acquired a lien by way of a first deed of trust on the parcel of land in question some years ago when it was located on St. John Avenue in Kansas City, Missouri. Sometime in 2001 it changed its name to Missouri Family Credit Union and in May 2003 moved to a location in Independence, Missouri. In May 2003 an Appointment of Successor Trustee was recorded with the County, reflecting the Credit Union's change of name, but not its new address. Notices of a planned tax sale were sent in July 2004 to the owner of the property and to Northeast Credit Union at the St. John Avenue address. The notice to Credit Union was returned by the Postal Service as undeliverable.

At the August 16, 2004, tax sale the property was purchased for $18,000. Unaware of the tax sale, Credit Union had instituted foreclosure proceedings and a public sale two weeks later drew a bid of $37,000. Taxes owed at the tax sale were $2,908.61 and the deficiency on the Credit Union's deed of trust was $36,500. Conflicting evidence was presented of the value of the parcel at the time of the tax sale. A certified appraiser hired by the County testified the property was worth $40,000 but had a discounted fair market value of $26,500 because of the forced tax sale. The purchaser at the Credit Union's foreclosure sale testified that the property was worth as much as $65,000. The trial court found that the sale price was adequate and confirmed the tax sale but made no specific findings about the notice issue.

### Discussion

■ In a judge tried case our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will uphold the judgment of the trial court unless it is not supported by substantial evidence, is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

We combine our discussion of Credit Union's first two points on appeal because they question the adequacy of the tax sale price and the trial court's actions in determining that adequacy at the confirmation

hearing. Credit Union's first point on appeal is that the $18,000 tax sale price for the property was inadequate and that the sale should, therefore, be invalidated. Its second point is that the trial court should have required, pursuant to statute, that the successful bidder raise its bid subject to the sale not being confirmed.

■■■■ Credit Union asserts, in an argument section consisting of one paragraph, that the tax sale price was grossly inadequate. The tax sale was held according to the provisions of chapter 141, sometimes referred to as the Land Tax Collection Act, which applies to chartered first class counties. Sections 141.210–141.810, RSMo (2000). Adequate consideration, as the term is used in Chapter 141, is such an amount as the court is satisfied is substantial, and fairly and reasonably commensurate with the value of the land in the circumstances of a forced-tax sale[.] *Hatten v. Parcels of Land Encumbered with Delinquent Tax Liens*, 358 Mo. 853, 217 S.W.2d 511, 514 (1949). The circumstances or risks involved in buying real estate at any forced sale include, among other things, unknown or unrecorded encumbrances, unknown liens or assessments, unidentified titles, latent environmental hazards, and the potential for legal disputes and the accompanying legal fees. *See Yokley v. Wian*, 877 S.W.2d 179, 183 (Mo.App.1994). Property sold at a sheriff's sale will not normally sell for a price approaching its fair market value. *Id.* Generally, to set aside a Chapter 141 tax sale on the basis of inadequate consideration, the consideration paid must be so grossly inadequate that it shocks the conscience of the court. *Brasker v. Cirese*, 269 S.W.2d 62, 67 (Mo. banc 1954).

The trial court heard conflicting evidence as to the actual property value. The winning bidder at the Credit Union's foreclosure sale testified that he believed the property was worth as much as $65,000. The county appraiser, on the other hand, testified that the property value was $40,000 but discounted it to $26,500 (a one-third discount) because the property was being sold at a forced tax sale.

■■■■ The value of the property is a question of fact, not law. And we defer to the trial court's determinations as to witness credibility. *Clippard v. Pfefferkorn*, 168 S.W.3d 616, 619 (Mo.App.2005). Evidence in the record supports a finding that the property may have been worth as little as $26,500 after being discounted for the aforementioned risks of a forced sale. The trial court believed the $18,000 tax sale price was not so grossly inadequate as to shock the conscience of the court. We find sufficient evidence in the record to support the decision of the trial court not to set aside the tax sale based upon inadequate consideration. Nor was the court's finding against the overwhelming weight of the evidence.

■■■■ Credit Union argues that under section 141.580 the trial court could have requested that the tax sale bidder raise its bid to a price the court was willing to accept. It asks us to remand to the trial court to follow this procedure. Although this alternative is initially available to the trial court, we believe it can be compelled to do so only if we find that the sale price was so inadequate as to shock our conscience.[1] We cannot say that the sale price in this case was grossly inadequate.

1. Although it may appear from the facts that two discounts from fair market value have been applied (one by the appraiser and one by the successful tax sale bidder), this view is misleading. There appears to be no suggestion in the case law that the successful bid be the same as the appraiser's discounted value. In fact, the tax bidders do not have that

Points one and two are denied.

■ In its final point Credit Union contends that the sale should be set aside because it did not receive notice of the planned tax sale. The County sent notice of the forced sale to the mortgagee address recorded on the deed, Credit Union's former address. Credit Union's argument under point three consists of descriptions or quotations from cases with virtually no attempt to relate them to the facts at hand. Our deduction of Credit Union's argument, however, is that the County had knowledge of its address change prior to the tax sale, but failed to send notice to its new address. As a result, Credit Union argues that it was deprived of due process under *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and subsequent cases. Credit Union does not discuss or cite to any Missouri statute dealing with statutorily required notice of tax sales to mortgagees. The County extensively discusses the notice provisions of Chapter 141. It argues that the notice provisions of section 141.440 apply only to owners. It then cites to section 141.540.6 stating that notice to the mortgagee is optional with the county. Because Credit Union raises no argument about either notice statute we will not discuss those provisions. Suffice it to say that to the extent the County suggests that neither statute nor the constitution require notice to the mortgagee, it is wrong.

> [A] mortgagee, whose interest in the property is publicly recorded, has a constitutionally protected interest in real estate, and the due process clause of the Fourteenth Amendment to the United States Constitution requires the tax authority to give written notice of a tax sale to a mortgagee by notice mailed to the mortgagee's last known available address, or by personal service.

*Anheuser–Busch Employees' Credit Union v. Davis*, 899 S.W.2d 868, 869 (Mo. banc 1995) (citations and internal quotation marks omitted). Lack of sufficient notice leaves a tax sale that fails to extinguish the deed of trust. *Lohr v. Cobur Corp.*, 654 S.W.2d 883, 886 (Mo. banc 1983).

Our question, therefore, is whether due process was satisfied when the County sent notice to the last known address as shown in the recorder of deeds office where Credit Union's deed of trust was recorded. It is undisputed that Credit Union did not file anything in the recorder's office and particularly anything that would show up in an affected instrument or other index showing that the address of the mortgagee had changed. The Credit Union did file an appointment of successor trustee, which showed Credit Union's name change but not its new address. Nevertheless, the County apparently failed to pick up this name change and sent the notice in the former name. There is no evidence and no argument by Credit Union that if the notice had been sent in the new name but at the old address, it would have reached them.

■ Credit Union, however, argues that knowledge of the address change should be imputed to the county. It says that the county knew of Credit Union's address change by virtue of the fact that Credit Union began paying its own property tax to the county at its new location after it moved. This evidence was somewhat equivocal. Credit Union's president testi-

---

appraisal at the time of the sale. Moreover, we must be mindful that the objective of receiving an adequate price must be balanced against the purpose of the county collecting unpaid taxes. Properties unsold are placed in the land trust and thereby do not supply the county with its tax revenue.

fied that when he received the Credit Union's own tax bill for personal property, he crossed out the old address and paid the bill. No showing was made in the evidence that the Collector of Revenue's records permanently reflected that change. Even so, due process does not require extraordinary steps be taken by the taxing authority when a notice is returned as undeliverable.

■ A balance exists between due process and a party's obligation to protect their own property. *See Schwartz v. Dey,* 780 S.W.2d 42, 44 (Mo. banc 1989).[D]uties imposed by due process on the tax collector must be considered in balance with the duty of a landowner to preserve his property. *Id.* In other words, at some point, a property owner's presumptive duty to preserve his property will outweigh the responsibility of a tax collector to provide more extensive forms of notice.

Applying the above, it becomes clear that, in this case, constitutionally sufficient notice only required the County to personally serve notice to Credit Union or send notice to Credit Union's last known address, unless the County had some knowledge that the notice was not likely to reach Credit Union. *Id.; Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972). The County contends that the address on the deed of trust where notice was sent was the last known address that it had for Credit Union.

A similar circumstance occurred in *Schwartz v. Dey,* where a group of former property owners (plaintiffs) brought suit to set aside a tax sale that relieved them of their property. 780 S.W.2d at 42. The plaintiffs argued that they had not received adequate notice of the tax sale, in violation of their due process rights. *Id.* The County had mailed notice to the address of the property, as the recorded deed indicated, though the owners did not live there. *Id.* at 43. The court held that the plaintiffs were not denied due process when the notices of the tax sale were sent to the address indicated on the deed. *Id.* at 45. The court held as such even though the County could have obtained the plaintiffs' new address by contacting the current tenants of the property or the attorney listed on the deed that had represented the plaintiffs in the purchase of the property. *Id.* at 44. With regard to the County's responsibility to ascertain a delinquent owner's address beyond that recorded on the deed, the court held that *Mullane* and its progeny do not require the collector to ascertain whether the owner's publicly recorded address is correct: The collector is not required to make impracticable and extended searches . . . in the name of due process. Nor is he required to undertake extraordinary efforts to discover the . . . whereabouts of [the owner]. *Id.* at 45 (citations and internal quotation marks omitted).

Similarly, in the present case, the County is not required to take upon itself the task that Credit Union urges here by implication. Due process does not mandate that the County investigates whether Credit Union's publicly recorded address is correct, at least not without some advance knowledge that the address of record is wrong. As stated, no evidence was admitted that the County had knowledge of Credit Union's new address or that Credit Union had actually provided its new address to the County.

Under *Schwartz,* the County was not required to contact the trustee named on the deed for the purpose of effectuating notice. *Id.* at 44. We do not believe that the filing of a successor trustee indicating only that a name change had taken place is sufficient to make the County aware that the notice of tax sale was unlikely to reach

Credit Union, thus rendering it constitutionally insufficient.

Even if the Collector's internal records indicated Credit Union's new address, we do not believe that due process required the County to search those records to see if the mortgagee's name and address had changed. Point denied.

The judgment is affirmed.

PAUL M. SPINDEN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.