In the Matter of FORECLOSURE OF LIENS FOR DELINQUENT LAND TAXES BY ACTION IN REM: MANAGER OF REVENUE OF JACKSON COUNTY, MISSOURI, Respondent,

The Nigro Family Partnership, LP, Respondent,

v.

Sandra K. Frey, Appellant.

No. WD 71978.

Missouri Court of Appeals, Western District.

Nov. 30, 2010.

Rehearing Denied Feb. 1, 2011.

Shawn E. Stewart, Kansas City, MO for appellant.

Jacqueline A. Sommer, Kansas City, MO for respondent Manager of Revenue of Jackson County, MO

John W. Roe and Frank A. Brancato, Kansas City, MO, for respondent The Nigro Family Partnership, LP.

Before Division Three: ALOK AHUJA, Presiding Judge, CYNTHIA L. MARTIN, Judge and GARY D. WITT, Judge.

CYNTHIA L. MARTIN, Judge.

Sandra Frey appeals the trial court's judgment setting aside a tax sale at the request of Jackson County, Missouri, as the result of irregularity, accident, or mis-

take. On appeal, Frey contends that the trial court erred in setting aside the sale because: (1) Jackson County provided notice of the sale and notice of assessed value increases of the property to the former property owner in accordance with statutory requirements such that no irregularity, accident, or mistake existed to warrant setting the sale aside; and (2) the trial court's order was an impermissible collateral attack on a prior judgment of foreclosure which ordered the sale. The judgment of the trial court is reversed and remanded for further proceedings.

### Factual and Procedural Background

On May 19, 2008, pursuant to the provisions of Missouri's Land Tax Collection Law, sections 141.210 to 141.810,[1] Jackson County, Missouri ("the County"), filed its petition and list of parcels of land encumbered with delinquent taxes with the Circuit Court of Jackson County. The petition listed parcels of land which were delinquent in the payment of taxes to the County for a period of two years or more. Included in the list of delinquent parcels was real property located at 3255 East 18th Street in Kansas City, Missouri ("Property"). The petition listed the Nigro Family Partnership ("the Partnership") as the name of the last known person in whose name tax bills were charged, or as the last known owner of record of the Property. The address provided in the petition for the Partnership was 968 Chambers Street, Suite 5, Ogden, Utah 84403–5082 (the "Utah address").

After the petition was filed, the County caused notices of the parcels listed in the petition to be published for four consecutive weeks throughout late June and early July of 2008. On June 2, 2008, the County sent notices of the petition to the last record owner of the delinquent parcels. On August 25, 2008, the trial court entered a judgment, in rem, against many of the parcels, including the Property (the "Foreclosure Judgment"). The court ordered that the Property be sold by the Court Administrator of the County at a public sale for the purpose of satisfying the County's judgment for the tax liens.

On July 7, 2009, pursuant to section 141.540, the County mailed a notice of the sale to the Partnership. The County then caused a notice of the sale to be published for four consecutive weeks, which included notice of the sale of the Property. On August 26, 2009, Sandra Frey ("Frey") purchased the Property at the County's annual tax foreclosure sale for a sum of $55,949.43.

On October 19, 2009, the County filed an unverified motion to set aside the sale of the Property. Neither the County nor Frey had, prior to the filing of this motion, sought an order confirming the sale pursuant to section 141.580. Thus, at the time the motion to set aside the sale was filed by the County, title to the Property had not yet been delivered to Frey, though the purchase price for the Property had been paid.

The County's motion alleged that the sale of the Property was the result of irregularity, accident, or mistake in that the County had learned that its records did not reflect the correct address for the Partnership. The County's motion stated that the Utah address was never the mailing address for the Partnership. The motion offered no explanation for how an incorrect address for the Partnership had been made a part of the County's records. Notwithstanding, the County asserted that "because of incorrect ownership records, the proper owner did not receive notice of

1. All statutory references are to RSMo 2000 as supplemented unless otherwise noted.

the tax foreclosure suit and sale, as required by Missouri statutes. Nor did it receive notice of assessed value increases as required by Missouri statutes." The County asked that the court set aside the sale of the Property and to refund the purchase price to Frey. A copy of the motion was not contemporaneously served on Frey.[2]

The trial court summarily entered a judgment on October 27, 2009 (the "Judgment"), finding that the tax sale of the Property was the result of irregularity, accident, or mistake in that the County's records reflected an "incorrect mailing address" for the Partnership and that the Partnership "did not receive notice of the sale or of assessed value increases" for the Property. The Judgment ordered that the sale of the Property be set aside and directed the Court Administrator to refund the purchase price to Frey.

Frey learned of the Judgment and filed a motion to set aside the Judgment on November 16, 2009. In response to Frey's motion, the County filed an unverified supplemental and amended motion to set aside the sale of the Property. The supplemental and amended motion reiterated that the Utah address "was never the mailing address" for the Partnership and, in connection with this allegation, attached an affidavit of a County employee along with two pages of computer records relating to the Property. The affidavit stated that the first page of the records "was made on about May 27, 2005 by the Jackson County Assessment Department. This record sets out a change of address made by the Jackson County Assessment Department for the owner of [the Property]" to the Utah address. The affidavit stated that the second page of the records

"was made on about December 29, 2008, when the Assessment Department was advised that the Utah address was incorrect. The owner had never been located in Utah. Page 2 indicates a correction to the owner address to: 8535 Donnelly Ave., Kansas City, MO 64157." The inference apparently intended by the affidavit was that the change of address entered on the records in May 2005 was made in error by the County, through no fault of the Partnership, though this "fact" was not expressly alleged in either the County's supplemental and amended motion or in the accompanying affidavit.

The County's supplemental and amended motion also alleged that "the owner of the property was assured by Jackson County that the property would be removed from the 2009 tax sale. Due solely to County error, the property was not removed from the sale." This allegation was not, however, addressed in the affidavit. Moreover, this allegation did not indicate, among other things, when the conversation occurred, with whom it occurred, how the Partnership came to contact the County, or why the County agreed to remove the Property from the sale.

On January 6, 2010, the trial court denied Frey's motion to set aside the Judgment. No hearing was conducted prior to the entry of this order. On the same day, Frey filed a supplemental and amended motion to set aside the Judgment and a reply to the County's supplemental and amended motion to set aside the sale. Frey also filed a motion to confirm the sale pursuant to section 141.580 on January 12, 2010, and requested a hearing. On January 15, 2010, the trial court entered an order denying Frey's motions.

2.  The County claims the in rem nature of the proceedings did not require it to provide notice of the motion to Frey.

■ This appeal by Frey followed. The Partnership's motion to intervene as a party on appeal was granted.[3]

## Standard of Review

In reviewing a court-tried case, the appellate court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The appellate court must defer to the trial court's factual determinations and view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the judgment, disregarding all contrary evidence. *Langdon v. United Rests., Inc.*, 105 S.W.3d 882, 886 (Mo.App. W.D. 2003). "Questions of law, however, are reserved for the independent judgment of the appellate court without deference to the trial court's determination." *Id.*

## Pending Motions

■ Prior to addressing the merits of Frey's appeal, we must determine whether Frey has standing to file this appeal. The County filed a motion to dismiss Frey's appeal, arguing that she lacks standing to appeal the Judgment. Section 512.020 provides that any party to a suit aggrieved by a judgment of the trial court may appeal. Because Frey was not a named party in the underlying proceedings before the trial court, the County argues that she lacks standing to appeal from the Judgment setting aside the sale.

■ The County's argument is similar to an argument made by a party in *In re Foreclosure of Liens for Delinquent Land Taxes*, 226 S.W.3d 250 (Mo.App. E.D. 2007). In that case, a party argued that the initial owner of the property could not appeal from the trial court's judgment dismissing a motion to set aside the tax sale of the owner's property because the owner was not a party aggrieved by the judgment. *Id.* at 253. The court on appeal disagreed, noting that "whether a party may appeal is not based on a precise definition or formula, but the circumstances of the party at hand." *Id.* at 254. Because the initial owner lost ownership at the tax sale and would regain ownership if the sale was set aside, the court found that the initial owner was an aggrieved party with standing to appeal, even though the initial owner was not a named party in the underlying suit.[4] *Id.* at 253–54.

■ After purchasing the Property at the tax sale and paying the purchase price, Frey acquired an interest in the Property.

3. Frey has filed a motion to strike the Partnership's brief as it raises numerous factual allegations which are not supported by the record. We agree that the Partnership's brief is defective in this regard. In lieu of striking the brief, we have ignored those factual allegations in the brief that are not supported by the record, including, without limitation, all discussions with respect to a claimed "redemption" of the Property by the Partnership after the foreclosure sale. As a result, Frey's motion is denied.

4. This rationale is particularly applicable where, as in this case, the action is one purely in rem. *See* section 141.360 (requiring that suits for the foreclosure of tax liens "shall name [the collector] only by the title of his office and all such suits shall be brought directly against the real estate subject to the tax lien or liens to be foreclosed, and shall not name any person as defendant"). We further note that, even if in an indirect sense, "a proceeding in rem makes all who have an interest in the title to the property parties to the proceeding—not personally, but insofar as they are bound by the judgment as respects the res." *Spitcaufsky v. Hatten*, 353 Mo. 94, 182 S.W.2d 86, 112 (1944), overruled on other grounds by *Dir. of Dep't of Revenue, Jackson County v. Parcels of Land Encumbered with Delinquent Tax Liens*, 555 S.W.2d 293, 297 (Mo. banc 1977).

Though that interest had not yet risen to the level of legal title,[5] Frey's interest in the Property was nonetheless sufficient to afford her standing as a party aggrieved by the Judgment. Similar to the rationale in *In re Foreclosure of Liens for Delinquent Land Taxes*, the Judgment destroyed Frey's right to pursue the delivery of legal title by confirmation proceedings. Frey was, therefore, aggrieved by the Judgment, although she was not a party specifically named in the underlying foreclosure suit. Therefore, Frey has standing to appeal the Judgment setting the sale aside, and the County's motion to dismiss her appeal for lack of standing is denied.

The County also filed a motion seeking to dismiss Frey's appeal on the basis that her notice of appeal was untimely filed. However, in response, Frey filed a Rule 81.07 motion seeking a special order permitting a late filing of the notice of appeal. Frey filed her motion within six months from the date the Judgment became final and included an affidavit showing that the delay was not due to her culpable negligence, as required by Rule 81.07. Therefore, even if the County is correct and Frey's notice of appeal was untimely, we grant Frey's Rule 81.07 motion and treat the notice of appeal as having been timely filed. *See Tillis v. City of Branson*, 945 S.W.2d 447, 448 (Mo. banc 1997).[6]

### Analysis

### Points I and II

■ We now turn to the merits of Frey's appeal. In her first and second points on appeal, Frey contends that the trial court erred in setting aside the tax sale on the grounds that the Partnership did not receive notice of the sale or of assessed value increases because the County's records reflected an incorrect mailing address for the Partnership. Frey argues that the sale should not have been set aside on this basis because the County complied with the applicable statutory notice requirements.

Section 141.440 requires the collector to provide notice *of the petition* to sell parcels of land due to delinquent taxes by means of certified mail to the person named in the petition as being the last known person in whose name tax bills were charged, or the last known owner of record, and *to the address of that person upon the records of the collector.* Once a judgment of foreclosure is entered on the petition, the collector may, but is not required to, send notice *of the foreclosure judgment* in the same manner the collector is required to provide notice of the petition. Section 141.500.2. Finally, section 141.540.5 requires the collector to provide notice *of the tax sale* by means of certified mail to the person named in the petition as being the last known person in whose name tax bills were charged, or the last known owner of record, and *to the address of that person upon the records of the collector.* Similarly, section 137.180.1 requires that, whenever the assessor increases the valuation of any real property, the assessor must "notify the record owner of such increase, either in person, or by mail *directed to the last known address.*"

■ There is no dispute in this case that the County complied with the literal requirements of the aforesaid notice statutes. It sent all required notices to the

---

5. Legal title could not have been conveyed to Frey until the sale was confirmed as required by section 141.580.

6. We similarly deny the Partnership's motions to dismiss Frey's appeal on the basis that she lacks standing or that her notice of appeal was untimely.

address of the Partnership upon the records of the collector. That does not end our inquiry, however. Compliance with the technical statutory requirements for providing notice does not relieve the County of its overarching obligation to insure that its efforts to provide notice satisfy the requirements of due process. The Missouri Supreme Court has observed that " 'due process does not require that a property owner receive actual notice before the government may take his property.' " *Schlereth v. Hardy*, 280 S.W.3d 47, 52 (Mo. banc 2009) (quoting *Jones v. Flowers*, 547 U.S. 220, 226, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006)). Instead, the essential test to be applied is whether the notice "is *reasonably calculated* to reach the interested parties." *Garzee v. Sauro*, 639 S.W.2d 830, 832 (Mo.1982) (emphasis added). Missouri courts have held that notice by certified mail in the manner proscribed by Missouri's Land Tax Collection Law (i.e. *to the address of that person upon the records of the collector*) is "a mode of notice within the limits of practicality reasonably calculated to reach the interested parties—and hence constitutionally sufficient." *Ferguson v. Jackson Cnty.*, 688 S.W.2d 407, 410 (Mo.App. W.D.1985) (emphasis added) (internal citations and quotations omitted).

It is Frey's position that since the County complied with all of the statutory notice requirements of the Missouri Land Tax Collector Law, *Ferguson* mandates the conclusion that the notices sent by the County to the *address of the Partnership upon the records of the collector* were "reasonably calculated to reach the [Partnership] parties—and hence constitutionally sufficient" as a matter of law. *Id.* Frey acknowledges an exception to this principle where a collector may be required to undertake additional investigation to ascertain an owner's correct address when the collector learns that an address is incorrect in advance of the tax sale by virtue of undeliverable mail notifications. However, Frey claims this exception does not apply here as there was no evidence that the certified mail notices to the Partnership were returned to the County as either unclaimed or undeliverable.

There is authority that could be broadly read to support Frey's position. In *Schwartz v. Dey*, 780 S.W.2d 42 (Mo. banc 1989), the former owners of property brought suit to set aside the tax collector's deed issued following a tax sale, arguing they did not receive constitutionally sufficient notice of the tax sale. The required notices were sent to an address for the owners reflected on the records of the collector which had been drawn from the deed conveying title to the owners. *Id.* at 42–43. The owners did not contend that the collector knew their address of record was incorrect but, instead, claimed that there were various scenarios under which the collector could have ascertained the owners' correct address. *Id.* at 44. Although the court believed that it would have been possible to locate the property owners' correct address, constitutional analysis required the court to *"balance the interests of the parties and determine whether the collector's failure to make further attempts to notify [the owners] was unreasonable."* *Id.* (emphasis added). The court noted that due process does not require the collector to make impracticable and extended searches or to undertake extraordinary efforts to discover the location of an owner. *Id.* at 45. Accordingly, the court found that the scenarios advanced by the owners *placed a substantially greater duty on the collector than due process required* in that they required the collector to ascertain whether the owners' publicly recorded address was correct. *Id.* at 44–45.

In *In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem*, 190 S.W.3d 416 (Mo.App. W.D.2006), the former holder of a deed of trust on property claimed during a hearing to confirm a tax sale that it did not receive constitutionally sufficient notice of the tax sale. Notices had been sent to the holder's address shown on its deed of trust. *Id.* at 418. The holder thereafter moved its offices and claimed the collector should have known of its new address because it was paying its own property taxes at its new location. *Id.* at 420. This court stated that in **balancing the duties imposed by due process and a party's obligation to protect its own property, "at some point, a property owner's presumptive duty to preserve his property will outweigh the responsibility of a tax collector to provide more extensive forms of notice."** *Id.* at 421. Therefore, this court found that, **unless the County had some knowledge that the notice was not likely to reach the party,** it was not required to investigate whether the party's publicly recorded address was correct, and constitutionally sufficient notice only required the County to send notice to the party's last known address. *Id.*

Though these cases hold that notice sent to an incorrect address will not support setting aside a tax sale on the basis that the notice was constitutionally deficient, they do so based on their specific facts and not as a matter of law, as Frey contends. These cases do not stand for the "bright line" proposition that use of an incorrect address to provide notice to a property owner will never warrant setting aside a tax sale on the basis that notice was constitutionally deficient. In fact, as empha-

sized in both cases, courts are to apply a "balancing test" to the facts to determine whether a collector's efforts to provide notice to a property owner were unreasonable and, thus, constitutionally deficient. We can certainly envision a scenario where notice is sent to an incorrect address upon the collector's records due to no fault or responsibility attributable to the property owner but due entirely to a mistake or misconduct by a collector's office. On the current limited record, we are not prepared to conclude that notice sent to an incorrect address under such a circumstance would be deemed "reasonably calculated" to reach the property owner so as to comport with due process, given the standards described in *Schwartz*, 780 S.W.2d 42, and *In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem*, 190 S.W.3d 416.

In this case, there is no question that all required statutory notices were sent to the Partnership at the Utah address. There is no question that during all applicable periods, the Utah address was the address for the Partnership on the records of the collector. There is no question that the County now contends that the Utah address was never the correct address for the Partnership. This bare allegation, however, is legally insufficient to support a judgment setting aside the tax sale in light of *Schwartz*, 780 S.W.2d 42, and *In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem*, 190 S.W.3d 416. In fact, the "evidence" before the trial court was insufficient to permit the court to render a legal conclusion with respect to the constitutional sufficiency of the notice provide by the County to the Partnership one way or the other.[7] This is true not-

---

7. We do not know, for example: whether the address for the Partnership upon the collector's record was, in fact, incorrect, and if it was incorrect, how that address came to be

entered upon the collector's record; what, if any, role the Partnership played in the entry of an incorrect address upon the collector's record; who resided at the Utah address and

withstanding that the allegation of inaccurate notice was made (unusually) by the County—by the party who initiated the foreclosure proceedings in the first place. Once the tax sale occurred, Frey acquired an intervening interest in the Property, which prevented the County from divesting her of that interest without satisfying the same standard to prove that notice was not constitutionally sufficient that would have applied had the proceeding to set aside the tax sale been initiated by the Partnership.

It was error, therefore, for the trial court to summarily grant the County's motion to set aside the tax sale without an evidentiary hearing. *See Schwartz v. Dey,* 665 S.W.2d 933, 935 (Mo. banc 1984) (holding that the trial court erred in summarily dismissing a petition to set aside a tax sale without considering evidence of the means available to the collector for apprising plaintiff of the pendency of the sale). We are required, therefore, to remand this case for further proceedings. As Frey and the Partnership are parties to this appeal, they will remain parties to the proceedings on remand, entitled to notice of, and the right to participate in, those proceedings.[8]

On remand, the trial court, after hearing all relevant evidence, should determine

whether the County provided notice reasonably calculated to reach the Partnership; that is, notice that was constitutionally sufficient. If so, then the tax sale should not be set aside.

### Point III

■ In her third point on appeal, Frey claims that the trial court's Judgment setting aside the tax sale is barred by the doctrine of *res judicata* and is an impermissible collateral attack on the Foreclosure Judgment. Specifically, Frey argues that because the Foreclosure Judgment found that all statutorily required notices had been properly sent to the Partnership, the Judgment should not have found to the contrary. We disagree.

■ Motions to set aside tax sales can be filed either before or after confirmation of the sale. *See, e.g., Schwartz,* 780 S.W.2d at 42 (former owners of property brought suit to set aside tax collector's deed following tax sale claiming constitutionally deficient notice); *In re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem,* 190 S.W.3d at 418 (former owners filed motion to set aside tax sale, which was considered at the same time as the hearing to confirm the sale pursuant to section 141.580). Our Su-

---

what, if any, affiliation they had with the Partnership; who accepted delivery of the notices sent to the Utah address, and what, if any affiliation they had with the Partnership; when and how the Partnership learned of the incorrect address; the circumstances surrounding the purported discussion between the County and the Partnership wherein the County allegedly advised it would remove the Property from the sale; why, if this conversation occurred, the Partnership did not redeem the Property by the payment of the delinquent taxes, before the sale; whether, notwithstanding an allegedly incorrect address for the Partnership, the Partnership nonetheless had actual notice of the petition to foreclose and of the tax sale; how long the Partnership had not paid taxes and why the Partnership had

not determined on its own that it was not paying taxes for the Property during the tax delinquency period; and so on.

8. Frey has not raised as an issue on appeal whether it was error for the Judgment to have been entered without advance notice of the County's motion to set aside the tax sale being served on Frey. We do not address, therefore, whether the purchaser at a tax sale becomes a party legally entitled to advance notice of any subsequent proceedings involving the sale, notwithstanding the *in rem* nature of the underlying proceedings, though we believe it obvious that the better practice would be to afford the purchaser at sale with such notice.

preme Court has expressly held that a judgment confirming a tax sale procured through fraud, accident, or mistake may be reopened for consideration. *Brasker v. Cirese*, 269 S.W.2d 62, 66 (Mo. banc 1954).

In *Director of the Department of Revenue, Jackson County, v. Parcels of Land Encumbered with Delinquent Tax Liens*, 555 S.W.2d 293 (Mo. banc 1977), the Director filed a motion to set aside a tax sale when the Director learned that the sale had been conducted in error as the delinquent taxes had, in fact, been paid prior to the sale. *Id.* at 295. The motion was filed after entry of the judgment of foreclosure and after entry of the judgment confirming the tax sale. *Id.* The purchaser at the tax sale objected, and claimed the motion constituted an improper collateral attack on these judgments. *Id.* at 296. As does Frey, the purchaser relied heavily on *Spitcaufsky v. Hatten*, 353 Mo. 94, 182 S.W.2d 86, 100–01 (1944), where the Supreme Court held a foreclosure judgment's finding that taxes were delinquent was *res judicata.*

The Supreme Court in *Director of the Department of Revenue, Jackson County* held that a motion to set aside judgments and deeds is in the nature of a writ of error coram nobis when an error of fact has been stated which may be and is demonstrated by extrinsic evidence. 555 S.W.2d at 296. Such a motion is:

> made to the trial court to correct errors of fact, not appearing on the face of the record, affecting the validity of proceedings which errors of fact were unknown to the party now seeking relief and to

the court at the time of disposition of the particular case, and which errors of fact, had they been known, would have prevented the rendition of the judgment.... The motion or application is considered a new action in the nature of an independent and direct attack upon a judgment with the purpose of revoking or annulling the judgment.

*Id.* (internal quotation marks omitted) (quoting *Norman v. Young*, 301 S.W.2d 820, 822 (Mo.1957)). The Supreme Court thus overruled *Spitcaufsky* to the extent deemed necessary by its holding. *Id.* at 296–97.

The analysis articulated in *Director of the Department of Revenue, Jackson County* applies equally here. The County filed a motion to set aside the tax sale claiming irregularity, accident, or mistake. Though not a writ of error coram nobis,[9] the motion similarly asserted that an error of fact, demonstrable by extrinsic evidence, and not appearing on the face of the record, affected the validity of the proceedings.[10] Though the Foreclosure Judgment· concluded that all notices required by statute had been sent to the Partnership, the County's motion arguing to the contrary should be considered a "new action in the nature of an independent and direct attack" on the Foreclosure Judgment. As in *Director of the Department of Revenue, Jackson County*, had the court which entered the Foreclosure Judgment known that the notices to the Partnership were going to an address that had been erroneously entered upon the records of the collector by the County,[11] then the Fore-

---

**9.** Effective January 1, 1988, Rule 74.06(d) abolished writs of coram nobis, and provided that "the procedure for obtaining relief from a judgment shall be by motion as prescribed in these Rules or by an independent action."

**10.** We recognize that technically the County's motion seeks to set aside not the Foreclosure

Judgment but only the tax sale for the Property. The practical effect, however, is the same.

**11.** We are not assuming by this reference that the facts as alleged by the County are correct, as that determination remains to be made by the trial court on remand.

closure Judgment would not have been entered.

Point three is denied.

### Conclusion

The judgment of the trial court setting aside the tax sale is reversed, and this case is remanded for further proceedings consistent with this opinion.

All concur.